J-S59007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MULLARKEY, | |
| Appellant | No. 1561 WDA 2014 |

Appeal from the PCRA Order September 4, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013073-2007

BEFORE:  BOWES, DONOHUE, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 16, 2015**

John Mullarkey appeals from the order entered September 4, 2014, denying his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

This Court delineated the underlying facts of this matter on direct appeal as follows.[1]

> Appellant and the victim, sixteen-year-old Demi C., were involved in an intermittent romantic relationship.  Attempting to rekindle his relationship with the victim, Appellant continually text-messaged her over a period of days.  During this time, Appellant displayed signs of depression to his close friend Greg B., who was also a neighbor of the victim.  After learning that

---

[1] This author penned the memorandum decision therein and was joined by Justice Fitzgerald and Judge Panella.

---

* Former Justice specially assigned to the Superior Court.

the victim and a male friend of hers were spending time together at her home, Appellant threatened to use a screwdriver to break the windows of her friend's car. On the date of the murder, Appellant and the victim text-messaged one another throughout the day before Appellant travelled to the victim's home. Prior to proceeding to the victim's residence, Appellant asked the victim if her older brother, who was also a friend, was home. The victim informed Appellant that her brother was not at the house. Before leaving for the victim's residence, Appellant told Greg B. that the victim told him that he could not hug or kiss her. Appellant asked his friend if he should still go and see the victim. Greg B. advised Appellant that there was no reason to see her, but Appellant decided that he had to talk with the victim. Appellant then stated to Greg B. that he hoped that he did not do anything stupid.

Meanwhile, Gale S., one of the victim's neighbors, walked to her daughter and son-in-law's house, which was next door to the victim's residence. While conversing, the three individuals heard blood-curdling screams coming from next door. Demi C. then exited her home covered in blood, staggered over to Gale S., and said that Appellant stabbed her. The victim and Gale S. collapsed onto the ground, as Gale S.'s son-in-law telephoned 911. While attempting to reach 911, he saw Appellant approach. Appellant appeared to be on a cellular phone and tossed the telephone to him before falling to the ground. In an attempt to commit suicide, Appellant had sever[ely] cut his own throat, causing a gaping wound from ear to ear.

Police, paramedics, and EMT's [sic] arrived shortly thereafter. Initially, Appellant's injuries were considered more serious and police directed the first paramedic to arrive on the scene to treat him first. Appellant was rushed to a hospital where his life was saved. The second paramedic to arrive immediately began life saving measures on the victim; despite these efforts, the victim died. She suffered a total of sixteen stab wounds from a three-and-one-half-inch pocket knife owned by Appellant. Several wounds were the length of the entire blade of the knife.

While under armed guard at the hospital, Appellant's ability to communicate was initially limited to writing statements on a dry erase board. At one juncture, Appellant questioned the

officer guarding him whether a person could still be found guilty if that person did something wrong while he was on medication that made that person do it. Appellant added that he had been taking Accutane, a prescription medication designed to combat severe acne, which he alleged caused suicidal thoughts and violent outbursts. In addition, Appellant indicated to the officer that he stabbed the victim two or three times, not sixteen as reported.

The Commonwealth charged Appellant with criminal homicide. Appellant proceeded to a jury trial, asserting as a defense diminished capacity. In support of his position, he contended that his use of the prescription drug Accutane caused uncontrollable and aggressive actions. Both Appellant and the Commonwealth called expert witnesses. The expert testimony largely consisted of a discussion of Appellant's depression and whether Accutane could have caused him to stab the victim sixteen times. At the close of the evidence, but prior to the jury receiving its instructions, the manufacturer of Accutane removed it from the market. Appellant requested the trial court to either instruct the jury on this action, permit him a continuance to investigate, or declare a mistrial. The court denied these requests and the jury returned a guilty verdict and Appellant received the mandatory sentence of life imprisonment.

*Commonwealth v. Mullarkey*, 32 A.3d 828 (Pa.Super. 2011) (unpublished memorandum, at 1-4).

This Court affirmed Appellant's direct appeal. *Id*. Our Supreme Court denied allowance of appeal on February 15, 2012. *Commonwealth v. Mullarkey*, 40 A.3d 121 (Pa. 2012). Appellant, represented by counsel, timely filed the underlying PCRA petition on February 13, 2013. The Commonwealth filed an answer and the PCRA court issued a Pa.R.Crim.P. 907 notice of dismissal, detailing its reasons for why Appellant's petition was

meritless. Appellant filed a response, and the PCRA court entered a final order on September 4, 2014. This timely appeal ensued.

The PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the PCRA court indicated that its opinion in support of its notice of intent to dismiss satisfied Rule 1925(a). The matter is now ready for this Court's consideration. Appellant raises a single generic issue: "whether the trial court erred by denying/dismissing Appellant's petition for post-conviction collateral relief without a hearing?" Appellant's brief at 2. Appellant, however, raises nine separate ineffectiveness claims. Those issues are as follows.

> 1. Trial [c]ounsel was ineffective for failing to move to suppress statements made by the Appellant while the Appellant was in the hospital and/or for failing to request a jury instruction on the voluntariness of the statements.

Appellant's brief at 25.

> 2. Trial [c]ounsel was ineffective for failing to object to statements made by the prosecutor during closing argument.

*Id*. at 32.

> 3. Trial counsel was ineffective for failing to present evidence of the character of the victim and the nature of the victim's relationship with the Appellant such to establish "adequate provocation" to merit a jury instruction on voluntary manslaughter (Pennsylvania Standard Jury Instruction 15.2503(A) [CRIM]). (brackets in original).

*Id*. at 36.

- 4 -

4. Trial counsel was ineffective for failing to secure a proper witness to testify as to the severe psychological side effects of the prescription drug Accutane.

*Id*. at 39.

5. Trial counsel was ineffective for failing to present an expert witness to testify to the nature of the wounds sustained by the victim and the Petitioner and the conclusions and inferences that could be drawn therefrom and/or for failing to effectively cross-examine the Commonwealth's expert witness, Dr. Todd Luckasevic.

*Id*. at 43.

6. Trial counsel was ineffective for failing to investigate and secure a proper expert witness to conduct a multiaxial evaluation of the Appellant and to present evidence regarding an Axis II diagnosis of the Appellant.

*Id*. at 46.

7. Trial counsel was ineffective for failing to present character witnesses[.]

*Id*. at 50.

8. Trial counsel was ineffective for failing to present evidence that the Appellant was known to carry the knife used to perpetrate the killing on a regular basis.

*Id*. at 52.

9. Trial counsel was ineffective for failing to present evidence of the tumultuous relationship between the victim and the Appellant.

*Id*. at 53.[2]

In reviewing a PCRA appeal, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In performing this review, we consider the evidence of record and the factual findings of the PCRA court. ***Id***. We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." ***Id.*** Accordingly, so long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. ***Id***. Where the issue presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." ***Id.***

Each of Appellant's positions relates to the effectiveness of trial counsel. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet

---

[2] We disapprove of Appellant's raising one general claim in his statement of questions presented and then setting forth nine separate issues in the argument section of his brief. Appellant should have included his nine ineffectiveness claims within his statement of issues presented for review. ***See*** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

A claim has arguable merit where the factual predicate is accurate and "could establish cause for relief." *Id*. at 707. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. *Id*. In considering whether counsel acted reasonably, we do not use a hindsight analysis; rather, an attorney's decision is considered reasonable if it effectuated his client's interests. *Id*. Only where "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success[,]" will counsel's strategy be considered unreasonable. *Id*. Finally, actual prejudice exists if "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

Appellant's initial ineffectiveness claim is that trial counsel rendered deficient representation by failing to seek to suppress Appellant's statements to police while he was in the hospital. While Appellant was hospitalized for his self-inflicted knife wound to his neck, he was instructed not to speak. Accordingly, he communicated with a dry erase board and marker. Detective Michael Kuma was on guard during the relevant period. At one point, Appellant tapped his dry erase board and wrote questions about a preliminary hearing. Appellant does not contest these questions. However, approximately three hours later, he wrote on the dry erase board, "If I did

- 7 -

something," before scratching those words out and writing, "If someone did something wrong and they were on medication that made them do it, could they still be found guilty?"

Appellant continued by indicating that he took Accutane and that it caused suicidal thoughts and violent tendencies. Additionally, Appellant responded to televised news broadcasts of his crime by writing on his board that the news report was mistaken as to the size of the knife he used and the number of wounds the victim suffered.

Appellant argues that counsel should have contended that his Fifth and Sixth Amendment rights and prophylactic **Miranda** rights were violated. In **Commonwealth v. Reed**, 42 A.3d 314 (Pa.Super. 2012), this Court discussed the distinction between the Fifth Amendment and Sixth Amendment right to counsel and **Miranda** warnings. The Sixth Amendment right to counsel attaches at or after the initiation of adversarial judicial proceedings. In contrast, the Fifth Amendment right to counsel generally attaches once the defendant is in a custodial setting and **Miranda** warnings are necessary.

According to Appellant, he was both in custody and subject to an interrogation when he wrote his questions and statements to the officer guarding him. In this regard, Appellant maintains that he was shackled to the hospital bed, charged with criminal homicide, and subject to "around-the-clock supervision by law enforcement." Appellant's brief at 28.

- 8 -

He continues that, for purposes of a ***Miranda*** analysis, an interrogation included any words or action by police that the law enforcement official should know is reasonably likely to elicit an incriminating statement. Appellant maintains that the officer watching him at the time should have known that engaging in a conversation with Appellant was likely to evoke an incriminating response. In addition, Appellant contends that his claim raises an issue of material fact because it is necessary to determine the nature of the conversation between the detective and him and whether the detective furthered that dialogue.

The Commonwealth responds that since no interrogation occurred, counsel cannot be deemed ineffective. In support, it relies primarily on ***Commonwealth v. Briggs***, 12 A.3d 291 (Pa. 2011). In ***Briggs***, the Pennsylvania Supreme Court discussed both the Fifth and Sixth Amendment right to counsel. Therein, the defendant was arrested by state police for homicide and asked for an attorney. Police informed him that the attorney he requested was not interested in representing him, and he asked for a public defender. An officer informed him that his attorney would probably instruct him not to speak with police but also informed him about a case where the defendant did not speak to police and received the death penalty.

The trooper then began to exit the room when Briggs stated, "I'm sorry, I'm sorry, tell their families I'm sorry, I didn't mean to kill them." ***Briggs***, ***supra*** at 318. The High Court rejected Briggs' Fifth and Sixth

Amendment claims, finding that Briggs was not subject to custodial interrogation nor was the statement deliberately elicited after the Sixth Amendment right to counsel attached. The Court concluded that Briggs' statement was voluntary and spontaneous. *Id*. at 325.

Here, the PCRA court observed that Detective Kuma had testified at the preliminary hearing that he did not ask Appellant any questions while he was guarding Appellant. It further determined that Appellant's writings were unsolicited and spontaneous utterances. The findings of the PCRA court are supported by the record. Appellant contends that Detective Kuma's police report indicates a two-way interaction. However, whether Detective Kuma responded to Appellant's questions does not indicate that he interrogated Appellant or provided responses that were reasonably likely to elicit an incriminating evidence. Detective Kuma did not question Appellant. Appellant volunteered the information in question without any action by police likely to induce Appellant to write his statements. Appellant's claim is without arguable merit.

To the extent Appellant submits that counsel should have presented evidence that Appellant was in such a drugged condition that his statements were involuntary, he fails to meaningfully develop this position with citation to authority. Further, the record at trial firmly establishes Appellant was coherent and not impaired. Counsel could not be ineffective in failing to pursue this meritless position.

The second issue Appellant levels on appeal is that trial counsel was ineffective in declining to object during the prosecutor's closing summation. The specific statements by the prosecutor that Appellant believes should have been challenged were as follows, (1) "Folks, let me digress for a few minutes and talk about this boogeyman that's been conjured up in the openings and that Dr. Wagner tried to frighten you about. This cold turkey nonsense." N.T., 6/23-29/09, 720-721; (2) "So that's when he's laying in his hospital bed trying to figure a way, how he's going to spit this hook and get himself out of this jam what's he asking Detective Kuma about?" *Id*. at 724; and (3) "Ladies and gentlemen, the writing was on the wall in this relationship. Domestic violence is a big problem in today's society. All right. And I submit to you had they continued down this path, you know, that's where we were heading here. The writing's on the wall." *Id*. at 732.

Appellant avers that the prosecutor committed misconduct by interjecting his own personal opinion as to the credibility of Appellant's defense with respect to the first two statements. In addition, Appellant posits that, in the final statement, the prosecutor improperly discussed issues broader than a determination of guilt. Appellant discusses *Commonwealth v. McGeth*, 622 A.2d 940 (Pa.Super. 1993), *affirmed per curiam*, 636 A.2d 1117 (Pa. 1994), and *Commonwealth v. Green*, 611 A.2d 1294 (Pa.Super. 1992), in support.

- 11 -

In **McGeth**, a jury found the defendant guilty of aggravated assault and drug offenses. The aggravated assault counts related to a scuffle with police. The prosecutor during his closing argument called the defendant a creep and animal and, in response to defense counsel's attack on the officers involved credibility, listed the names of a number of police officers not involved in the case and referred to them as heroes. This Court reversed for a new trial, finding that the prosecutor's argument was improper.

In **Green**, a jury found the defendant guilty of aggravated assault but acquitted him of possession of an instrument of crime after the defendant shot an individual. On appeal, Green maintained that the prosecutor improperly set forth in his closing the number of annual homicides in Philadelphia and the motives for highway shootings in Los Angeles, California. The **Green** panel determined that these arguments were improper because they were not based on any evidence in the record and were irrelevant to the case.

The Commonwealth rejoins that the first comment by the prosecutor was in direct response to Appellant's evidence and defense. Specifically, the Appellant's expert, Dr. Daniel Wagner, stated that no individual should stop taking any drug cold turkey. The Commonwealth points out that, during cross-examination, the prosecutor inquired of the witness whether he was familiar with any studies discussing individuals suspending the use of Accutane cold turkey, to which that witness responded in the negative. It

also highlights that it presented evidence from its own expert that individuals are not weaned off Accutane. In the Commonwealth's view, the prosecutor's argument was based on evidence of record and a proper, though rhetorically strong, counter to Appellant's defense. We agree.

The Pennsylvania Supreme Court has opined, "The phrase 'prosecutorial misconduct' has been so abused as to lose any particular meaning. The claim either sounds in a specific constitutional provision that the prosecutor allegedly violated or, more frequently, like most trial issues, it implicates the narrow review available under Fourteenth Amendment due process." ***Commonwealth v. Tedford***, 960 A.2d 1, 28 (Pa. 2008). It added, "ineffectiveness claims stemming from a failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right[.]" ***Id***. at. 29.

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. The prosecution's statements are unobjectionable if they are based on the evidence or proper inferences therefrom, or represent mere oratorical flair. Additionally, the prosecution must be permitted to respond to arguments made by the defense.

***Id***. at 33 (internal citations and quotations omitted).

Here, the prosecutor's statements had firm foundations in the evidence. Although the prosecutor did state that Dr. Wagner's testimony

regarding stopping cold turkey was nonsense, the evidence revealed that there was no support for Dr. Wagner's testimony as it related to Accutane. While "it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses," nevertheless, the "prosecutor may comment on the credibility of witnesses." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa.Super. 2009) (citation omitted). A prosecutor is permitted to fairly respond to a defense and comment on the evidence. *Commonwealth v. Sanchez*, 82 A.3d 943, 981 (Pa. 2013). Nothing in the prosecutor's initial statement would result in a jury having such a fixed bias against Appellant as to be unable to render a fair verdict.

For similar reasons, Appellant's challenge to the second statement by the prosecutor fails. The prosecutor was referring expressly to Appellant's statements to Detective Kuma about Accutane. A prosecutor is permitted to comment on evidence and make arguments regarding that evidence. *See Sanchez*, *supra*; *see also Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014). Appellant's claim is devoid of merit.

The final aspect of Appellant's position fairs no better. The prosecutor's discussion of the relationship heading toward domestic violence was in opposition to Appellant's defense that Appellant and the victim were engaged in a typical teenage relationship. The prosecutor, based on the evidence of record, was arguing that Appellant's relationship was not typical and was marred by the types of behavior consistent with domestic violence.

This case is simply not akin to **Green**, **supra** or **McGeth**, **supra**. The Commonwealth's argument was fair comment based on Appellant's defense and the evidence in the case.

Next, Appellant contends that trial counsel was ineffective for failing to present evidence of the victim's character and her relationship with Appellant, which would have warranted a voluntary manslaughter instruction. In doing so, Appellant attempts to challenge the law of the case relative to this Court's prior memorandum, where we found that the evidence established that any provocation that occurred was the result of words. **See** Appellant's brief at 38 (internal citation omitted) ("The Memorandum Opinion erroneously contends that the only evidence of any possible provocation on the part of the victim can be found through the Appellant's 'own self-serving claims, he related to others' and that the only provocation present was 'nothing more than words.'").

Although Appellant maintains that the victim engaged "in a pattern of intentionally vexatious behavior, toyed with the Appellant's emotions, and sought to evoke jealousy[,]" Appellant's brief at 39, Appellant nowhere proffered below any witnesses who were willing to testify in this manner. Appellant provided the names of several witnesses who did testify, as well as others, who could have commented on the victim's relationship with Appellant. However, none of Appellant's arguments raise an issue of genuine fact as to whether these witnesses could have testified that the

victim's actions were so severe as to have provoked Appellant to stab her over sixteen times.

Indeed, Appellant attempts to rely on **Commonwealth v. Shaver**, 460 A.2d 742 (Pa. 1983), the case this Court concluded was inapposite on direct appeal. In **Shaver**, our Supreme Court affirmed the defendant's judgment of sentence for first-degree murder after he pled guilty generally to murder. The defendant shot and killed his estranged wife and the trial court determined at a degree-of-guilt hearing that Shaver committed first-degree murder. A psychiatrist testified at the hearing that Shaver "acted under 'extended provocation' brought about by the stress, anger and hostility created by his marital problems and that this provocation reached a 'crescendo' on the day of the killing." **Shaver**, *supra* at 745. The High Court concluded this testimony could have provided a basis for the trial court to find Shaver committed voluntary manslaughter, but that the trial court was free to reject the testimony as too vague to be credible. The facts relative to provocation that were discounted by the trial judge as related by the **Shaver** Court are as follows,

> [Shaver] and his wife had been living separate and apart for approximately six or seven months prior to the shooting here in question. In spite of this, there was continued discord between the parties. These difficulties centered around the Appellant's wife's (hereinafter decedent) affair with another person (hereinafter victim) and issues relating to custody and visitation rights of the Appellant's eight-year old daughter. There were continuous arguments as to these visitation rights, escalating at

times into the use of physical violence. A protective order under the Protection from Abuse Act was required.

*Id*. at 743.

The facts of this case that Appellant contends support serious provocation were that the victim had kissed another boy in front of him, lied to him about quitting cheerleading, flirted with someone on MySpace, socialized with another boy, told him that she was sick of him, and struck him while he was physically restraining her on the day of the killing. Custody, visitation, and an affair between a husband and wife that resulted in physical violence and a protection from abuse order is not analogous to the on-again off-again struggles of a high school romance. None of the actions alleged by Appellant, even when combined, constitutes serious provocation and Appellant points to no case law that so holds.

Appellant also alleges that counsel was ineffective in neglecting to present a proper expert pharmacologist to testify as to the severe psychological side effects of Accutane. In this regard, he challenges trial counsel's decision to utilize Dr. Wagner, who was thoroughly and effectively cross-examined by the prosecution. Appellant improperly attempts to incorporate his arguments from below into his appellate brief. *Briggs*, *supra* at 342-343; *Commonwealth v. Dodge*, 77 A.3d 1263, 1275 (Pa.Super. 2013). Further, he attempts to circumvent the requirement that he establish the existence of an expert who would testify that Accutane's

side effects were so overwhelming as to cause Appellant to have lost his faculties and mandated a voluntary intoxication charge.[3]  He does this by averring that his claim is not that counsel failed to present a particular expert witness, but that such a witness exists.  Nonetheless, he does point out that he attached a report to his PCRA petition from Dr. Frederick Fochtman.

The Commonwealth counters that Appellant must not just show that a qualified potential expert exists, but has to establish "what evidence was available and identify the witness who was willing to offer such evidence." Commonwealth's brief at 42 (quoting **Commonwealth v. Williams**, 640 A.2d 1251 (Pa. 1994)).  It asserts that the report of Dr. Fochtman does not support the position that Appellant's ingestion of Accutane prevented him from forming a specific intent to kill when he stabbed the victim numerous times.

> In order to prevail on a claim of ineffectiveness for failing to call a witness, a defendant must prove, in addition to meeting the three **Pierce** requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial.

---

[3]  We note that Appellant was taking a half-dose of the drug shortly before the crime, before ceasing usage of the drug by the date of the murder.

*Commonwealth v. Wright*, 961 A.2d 119, 155 (Pa. 2008) (footnote omitted); *Commonwealth v. Walls*, 993 A.2d 289, 302 (Pa.Super. 2010).

The PCRA court noted that Dr. Fochtman's report simply stated that "it cannot be ruled out that his course of acting in therapy may have contributed to his state of mind." PCRA Court Opinion, at 20. It opined that the report failed to meet the requirement of expert testimony being rendered to a reasonable degree of scientific certainty.

Despite Appellant's attempt to elude the requirement that he actually proffer an expert willing to testify as to his defense who would not have been subject to the same cross-examination as Dr. Wagner, his failure to present a witness whose testimony would actually support the defense of voluntary intoxication results in a failure to establish actual prejudice. Only where a particular witness is available to testify and would have testified, and that testimony would lead to a reasonable probability of a different outcome, can a petitioner establish prejudice. As recognized by the PCRA court, Dr. Fochtman's report would have been inadequate to give rise to a legal requirement that the court instruct the jury on voluntary intoxication. Trial counsel was not ineffective in choosing to offer Dr. Wagner rather than another expert pharmacologist.

In his fifth claim, Appellant submits that trial counsel was ineffective in failing to present an expert witness to testify that the nature of the stab wounds of both Appellant and the victim indicated Appellant engaged in "a

- 19 -

violent, maniacal, frenzied assault." Appellant's brief at 44. In his view, this would have supported a diminished capacity defense. Additionally, he alleges that counsel was ineffective in neglecting to adequately cross-examine Commonwealth expert witness, Dr. Todd Luckasevic.

Appellant proffered an expert report from Dr. Eric Vey, a forensic pathologist, regarding the stab wounds to both Appellant and the victim. He maintains that Dr. Vey inferred from the wounds that "suicides by sharp force weapons are associated with a high frequency of a psychological dysfunction…" Appellant's brief at 44 (quoting Dr. Vey's report, PCRA Exhibit O). Appellant asserts that Dr. Vey's report, if presented, could have established that the killing was in the heat of passion. He also, in boilerplate fashion and without development, contends that Dr. Vey's testimony could have supported an involuntary manslaughter charge. This latter aspect of his claim fails for lack of development.

The Commonwealth astutely responds that evidence that a person had a mental disturbance or acted in a violent, maniacal, and frenzied manner does not establish a diminished capacity defense. Rather, Appellant was required to demonstrate serious provocation by the victim. Since Dr. Vey's proposed testimony does not in any manner address the proper standard for diminished capacity, the Commonwealth maintains Appellant is entitled to no relief. We agree.

"To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011). Equally important, "[e]vidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity." *Id*. The fact that a person has a personality disorder also does not establish a diminished capacity defense. *Id*.

Dr. Vey's expert report does nothing to show serious provocation nor does it apply a hypothetical fact situation of serious provocation to conclude that Appellant's stabbing of the victim and himself were the result of such a mental defect that he could not formulate specific intent. Dr. Vey's report establishes that Appellant acted impulsively and that he suffered from a mental disturbance, but does not further a diminished capacity defense.

Appellant relatedly contends that trial counsel was ineffective in his cross-examination of the Commonwealth's expert forensic pathologist, Dr. Luckasevic. He argues that trial counsel's thirteen questions to Dr. Luckasevic did not address inferences regarding Appellant's mental state that could be drawn from the injuries the victim and Appellant suffered.

The Commonwealth replies that Appellant has not indicated that Dr. Luckasevic would have actually testified in the manner proposed had he

been so questioned. As Appellant failed to even proffer that Dr. Luckasevic would have testified in a manner consistent with his proposed defense, he cannot establish actual prejudice.

The sixth issue Appellant advances on appeal is that counsel was ineffective in failing to present an expert witness regarding Appellant's Axis II diagnosis.[4] The Axis II diagnosis Appellant refers to was a finding of a personality disorder not otherwise specified. Appellant again attempts to improperly incorporate arguments he made below by reference. ***See Briggs***, ***supra***; ***Dodge***, ***supra***. Nevertheless, he does outline his position that counsel should have directed his own expert witness, Dr. Robert Wettstein, to perform a multiaxial evaluation of Appellant or presented the testimony of another expert regarding Appellant's personality disorder.

Appellant avers that Dr. David Ness performed a multiaxial evaluation before Appellant hired Dr. Wettstein.[5] Dr. Ness diagnosed Appellant with a

---

[4] Under the Diagnostic and Statistics Manual of Mental Disorders ("DSM"), published by the American Psychiatric Association, there are multiple Axes that relate to certain psychological or mental disorders.

[5] Dr. Wettstein authored an expert report for trial and included a diagnosis under Axis I that Appellant had a depressive disorder not otherwise specified and alternatively an adjustment disorder with depressed mood. He did not perform an Axis II diagnosis and set forth that he could not "state with reasonable psychiatric certainty that the defendant, at the time of the alleged offense, was so severely depressed, whether due to the Accutane or a situational reaction to the problematic relationship with the victim, that he
*(Footnote Continued Next Page)*

personality disorder. Appellant also submits that he was examined on January 10 and 11, 2013, by Dr. Ernest Boswell, after his conviction. Dr. Boswell's report was attached to Appellant's PCRA petition. Therein, Dr. Boswell opined,

> The trigger to the immediate conflict appeared to be Mr. Mullarkey's statement to the effect of, "Why do you need to be such a bitch? [The victim] reacted angrily and made comments to the effect that she hated Mr. Mullarkey and never wanted to see him again. As testified to by Dr. Wettstein, Mr. Mullarkey felt like he was, "low, worthless, garbage, crushed, like I wasn't a person." In that moment, Mr. Mullarkey realized the fundamental truth that the relationship was over. He was overcome with sudden and intense anger. His emotions were out of control. Due to his personality dynamics he was unable to effectively cope with the intense anger, or engage in normal reflection which may have mediated his response to the situation. Overwhelmed by his emotional state, his actions are viewed as instantaneous in the context of the immediate situation and not premeditated.

Dr. Boswell's Report, 1/28/13, PCRA Exhibit M, at 23.

Although Dr. Boswell set forth that it was his opinion that Appellant's actions were "the result of serious provocation" and his personality disorder, *id*. at 24, the actual provocation discussed in Dr. Boswell's report was the victim's angry comments that she hated him and did not want to see him again. As a matter of law, such words do not rise to the level of serious provocation. Hence, even if Dr. Boswell testified at trial, Appellant still

_(Footnote Continued)_ ⸻

completely lacked the cognitive ability to premeditate and deliberate the alleged offense." PCRA petition, Exhibit L.

would not have met the legal criteria for a heat of passion or diminished capacity instruction. **See Hutchinson**, **supra** (fact that person lacked ability to control himself and acted impulsively does not establish diminished capacity). Appellant's position does not entitle him to relief or raise an issue of material fact.

Appellant's seventh issue is that counsel was ineffective in declining to present character witnesses. Appellant contends that character evidence that Appellant had a reputation for being peaceful and law-abiding would have supported a voluntary intoxication defense. He asserts that a person known to be peaceful who stabs an individual sixteen times is acting completely out of character. According to Appellant, this character evidence could have helped demonstrate that he acted out of a sudden intense passion.

The Commonwealth counters that the trial court, in Appellant's presence at trial, asked counsel whether Appellant intended to call character witnesses. The court noted at that time that if Appellant was in disagreement he could alert the court. Trial counsel set forth that he had discussed with Appellant whether they would call character witnesses and had elected not to present any such witnesses. It continues that although Appellant in his PCRA petition named four character witnesses, he did not attach any signed certifications or affidavits regarding what those individuals would have testified too.

The PCRA court determined that any character evidence would not have supported a voluntary manslaughter charge based on heat of passion since there was not evidence that established the requisite serious provocation. It then ruled that, since character evidence would not support Appellant's diminished capacity defense, counsel had a reasonable basis for not presenting it.

Initially, this Court does not ordinarily dismiss a claim based on a lack of a signed witness certification where that was not a reason for dismissal below, and the petitioner was not given an opportunity to correct the defect. *Commonwealth v. Pander*, 100 A.3d 626, 642 (Pa.Super. 2014) (*en banc*) ("it is improper to affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect."); *see also Commonwealth v. Robinson*, 947 A.2d 710, 711 (Pa. 2008) (*per curiam* order) (opining that it was error to uphold summary dismissal on grounds that petitioner did not include witness certifications from trial counsel where PCRA court did not provide notice of this defect).

Nevertheless, even assuming Appellant's proposed witnesses would have testified as to his peaceful nature, he cannot establish actual prejudice. The sole case Appellant cites, *Commonwealth v. Hull*, 982 A.2d 1020 (Pa.Super. 2009), is readily distinguishable. In *Hull*, a jury convicted the defendant of a host of sex offenses against his adopted daughter. The only

evidence the Commonwealth presented was that of the victim and her brother. Trial counsel's theory was that the children were lying and that the crimes did not occur. Counsel testified at a PCRA hearing that he had no particular strategy in not calling character witnesses. The PCRA court afforded relief and this Court affirmed, reasoning in part that character evidence alone could have resulted in an acquittal.

Here, Appellant's defense was not that he did not commit the crime. Instead, Appellant was seeking a finding of guilt that was lesser than first-degree murder. Contrary to Appellant's claim, evidence that Appellant had a peaceful character does not give rise to a legal inference that he was seriously provoked or suffering from voluntary intoxication because he stabbed the victim outside of that character. In order to establish a lesser culpability than first-degree murder, Appellant was required to provide evidence of serious provocation or that his taking of Accutane so impaired him that he was unable to form specific intent. The presentation of character evidence does not do either and would not have warranted a jury instruction relative to voluntary manslaughter. Appellant cannot establish actual prejudice.

In his penultimate issue, Appellant posits that trial counsel was ineffective for not presenting the victim's brother to testify that he knew Appellant to carry a knife. Appellant fails to cite any legal authority and again incorporates his arguments from below by reference. In addition,

Appellant attempts to forward a related position that he did not advance below. Specifically, he avers that, even if the victim's brother was unwilling to testify, he could have presented evidence from a detective who interviewed the victim's brother. This aspect of Appellant's claim is waived.

The Commonwealth also contends that Appellant's failure to present a certification that the victim's brother was willing to testify dooms his claim. We have previously mentioned that we do not ordinarily affirm a summary dismissal on this ground where the PCRA court did not give this as a reason or provide an opportunity to remedy the defect. *Pander*, *supra*; *Robinson*, *supra*. However, in this situation the PCRA court in its Rule 907 notice did find that Appellant failed to allege that the victim's brother was willing to testify. Since Appellant had the opportunity to remedy this defect prior to the final order, we agree that no evidentiary hearing was warranted on this claim. *See* 42 Pa.C.S. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15).

Appellant's final position is that trial counsel rendered deficient representation by not questioning witnesses as to Appellant and the victim's romantic relationship. Appellant does not meaningfully develop this claim and, as with several other of his contentions, merely directs this Court to arguments he advanced below. The crux of Appellant's claim is that trial counsel did not effectively cross-examine various witnesses to show that Appellant suffered serious provocation.

The Commonwealth notes that Appellant has not sufficiently provided an offer of proof as to what the witnesses would have testified to had they been questioned in a manner still not specifically articulated by Appellant. It adds that this argument is duplicative of his third issue. In this respect, we find that Appellant's final issue fails for reasons already set forth insofar as none of the evidence Appellant purports that he could present rises to the level of serious provocation. Appellant is entitled to no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015