622 A.2d 940

COMMONWEALTH of Pennsylvania, Appellee,

v.

Sherman McGETH,[1] Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 17, 1992.

Filed Feb. 2, 1993.

Reargument Denied April 12, 1993.

1. In reviewing the record, we discovered the defendant's name is actually Sherman McGoth. We therefore refer to him by his correct name throughout this opinion despite the erroneous caption.

322

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, DEL SOLE and HUDOCK, JJ.

HUDOCK, Judge.

Appellant Sherman McGoth (McGoth) appeals the judgment of sentence entered against him following a jury trial during which he was tried for two counts aggravated assault, 18 Pa.C.S. § 2702 (Purdon 1983), possession of a controlled substance with intent to deliver, 35 Pa.C.S. § 780–113(a)(30) (Purdon Supp.1992), and related offenses. Following the denial of timely post-trial motions, the trial court sentenced McGoth to two concurrent terms of three to ten years imprisonment for aggravated assault, both sentences to run consecutively to a term of one to two years and a fine of $5,000.00 for the drug offense. This direct appeal followed. We reverse and remand.

We are without benefit of the trial court's wisdom in this matter as the Honorable John A. Geisz retired from the bench before filing an opinion. Therefore, taking the evidence and all reasonable inferences to be drawn therefrom in the light

most favorable to the Commonwealth as verdict winner, we base our review on the following facts of record.

On April 27, 1989, at approximately 12:30 a.m., McGoth and another man were talking in front of a bar at the corner of Landsowne Avenue and Redfield Street in Philadelphia, Pennsylvania. This location is considered a high-crime, high-drug area of Philadelphia. Police Officers Joseph Spera and John Donahue were in uniform and patrolling the area in a marked police van. As they approached the corner of Landsowne and Redfield, the officers noticed McGoth and the other man standing in front of the bar. As the officers exited their vehicle, McGoth entered the bar. Officer Spera followed McGoth into the bar in time to see McGoth drop something behind the vacant, chest-high "D.J. cubicle" at the rear of the bar. Officer Spera then went to check an exit at the back of the bar and found it was locked. He then returned to the front of the bar and saw that McGoth was now outside. Calling to his partner that McGoth had dropped something inside the bar, Officer Spera went back to the cubicle and recovered a plastic bag containing thirty-four vials of crack cocaine. Transcript of May 2, 1991, at pp. 30–44.

While Officer Spera was inside the bar, Officer Donahue frisked McGoth, finding seventeen .38 caliber bullets in McGoth's jacket pocket. Fearing that the dropped object may have been a gun, Officer Donahue attempted to handcuff McGoth. He managed to get one handcuff on McGoth when McGoth began kicking and punching Donahue. Struggling to control McGoth, Donahue asked a woman passerby to get his partner out of the bar. Transcript of May 3, 1991, at pp. 3–9. Spera arrived to find McGoth punching his partner. He tried to grab McGoth but was also punched. Spera then responded by hitting McGoth in the legs with a nightstick as McGoth swung wildly at him. During the struggle, McGoth did not speak; his eyes were glassy. The officers were unable to subdue McGoth. Both were knocked to the ground as McGoth broke loose and ran down Redfield Street. Transcript of May 2, 1991, at pp. 49–53. The officers gave chase, eventually catching McGoth inside a residence. Another

struggle ensued. When backup officers arrived, the combined effort of six of them successfully brought McGoth under control. Transcript of May 2, 1991, at pp. 54–57; May 3, 1991, at pp. 9–14.

Neither Officer Spera nor Officer Donahue was hurt. McGoth was taken to a hospital and treated for a black eye, abrasions, and soft tissue injuries. The attending neurosurgeon found a hairline skull fracture which he considered insignificant and not requiring admission. He did admit McGoth for high blood pressure, however. A drug screen revealed that McGoth had been under the influence of marijuana, alcohol and cocaine when he struggled with the officers. Transcript of May 3, 1991, at pp. 95–96.

On appeal, McGoth alleges prosecutorial misconduct and an error by the trial court concerning a Rule 1100 motion to dismiss.

McGoth's first challenge refers to five statements made by the District Attorney during closing arguments. These statements, as interpreted by McGoth, may be summarized as follows: 1) calling McGoth an animal and a creep; 2) naming a list of hero cops who were injured in recent scuffles while on duty around Philadelphia; 3) accusing defense counsel of misusing properly received discovery to concoct a false story; 4) implying defense counsel only impeached the officers on one portion of the preliminary hearing testimony so that the remaining portions must have been true; and 5) urging the jury to excuse the police officers from their duty to follow the law when dealing with a defendant who gives them trouble. At trial, McGoth contended these statements were egregious, not specific to the facts of the case, and improper argument. Transcript of May 7, 1991, at pp. 2–4. He further suggests on appeal that these statements were not justified by the doctrine of fair response. Appellant's brief at pp. 21–22.[2]

2. In his discussion of the fair response doctrine, McGoth urges this Court to reject any invited response analysis. McGoth's confidence in this argument stems from the United States Supreme Court's dicta, and especially from Justice Brennan's dissenting opinion, in *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The majority implied a dissatisfaction with the fair response doctrine, preferring to

In defense of the challenged statements, the District Attorney explained himself as follows: 1) the reference to creeps and animals was meant generally, and was not directed at McGoth personally; 2) the list of hero cops was also meant generally in terms of the types of people police officers face every day and the dangerous nature of their job; furthermore, the list of hero cops was in direct response to defense counsel's reference to the Rodney King incident in Los Angeles, a matter extraneous to the case at hand; 3) the third statement was not an implicit accusation of false reports but an observation that McGoth's story concurred with the testimony of the officers; 4) the suggestion that the remaining portions of the preliminary hearing notes must be true was never made; the District Attorney commented on the evidence, noting that defense counsel cross-examined the police officer on two specific pages out of a much longer document; and 5) the final statement was meant as a comment that the officers were justified in their actions once confronted by a person trying to cause them bodily harm.

■ Before turning to the merits of the prosecutorial misconduct challenge, we first address the Commonwealth's claim that McGoth waived this issue because he did not request a mistrial or a curative instruction. Having reviewed the closing arguments and the ensuing side bar conference during which defense counsel listed his objections, we find no motion for a mistrial or a curative instruction by defense counsel. We do not believe this necessitates a finding of waiver, however. In cases where the waiver standard has been invoked, the trial court sustained counsel's objection. *See Commonwealth v. Chimenti,* 362 Pa.Super. 350, 524 A.2d 913 (1987), *alloc. de-*

rely on the trial court's duty to enforce counsel's ethical behavior, rather than allowing improper argument to "right the scales." *Young,* 470 U.S. at 7–12, 105 S.Ct. at 1042–44 (citations omitted). Justice Brennan and his three fellow dissenters would go further and reject the fair response doctrine, suggesting instead that prosecutors be required to object to defense misconduct rather than being allowed to respond in kind.

We decline to elevate our authority and abolish the fair response doctrine, a chore more suitably left to the highest court of this Commonwealth.

*nied,* 516 Pa. 639, 533 A.2d 711 (while defense counsel did object, he failed to request mistrial or curative instruction, and consequently, the issue is not preserved for our review); *Commonwealth v. Jones,* 501 Pa. 162, 460 A.2d 739 (1983) (issue was waived on appeal where defense counsel immediately objected to prosecutor's conduct, but made no request for mistrial or curative instructions). By sustaining counsel's objection, a trial court indicates that the challenged conduct was, in fact, improper. Once counsel's, objection is sustained, therefore, a request for a curative instruction or mistrial (depending on the gravity of the misconduct) should be made immediately to remedy the error and/or to preserve the record.

The case at hand presents a situation in which the trial court overruled counsel's objections to the prosecutorial comments. Hence the issue becomes: Does the same waiver standard apply when an objection is overruled and counsel fails to request a curative instruction or mistrial? We believe that, under the present law of this Commonwealth, when an objection is overruled, failing to request curative instructions or a mistrial does not result in waiver. In *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976), the Pennsylvania Supreme Court suggested that, when defense counsel objects to certain remarks of the prosecutor and the trial judge overrules the objection, this preserves the matter for appellate review. The *Maloney* court stated:

> Herein, the objection was overruled, which distinguishes the situation from that presented in [*Commonwealth v.* ] *Glenn,* [459 Pa. 545, 330 A.2d 535 (1974) ] *supra. . . .* And finally, [because] the objection was overruled, the trial judge was in effect saying the district attorney's remarks were proper. *Under such circumstances, a motion for a mistrial [or curative instructions] would be an exercise in futility.*

*Maloney,* 469 Pa. at 352, 365 A.2d at 1242 (emphasis added). By overruling defense counsel's objections in the present matter, the trial court was, in effect, saying that the prosecutor's comments were proper. The trial court also indicated *sua sponte* that curative instructions would have been unnec-

essary. While defense counsel could have engaged in a futile exercise by requesting relief anyway, we do not believe his failing to do so amounts to waiver of his objections on appellate review.

In reviewing the merits of this prosecutorial misconduct claim, we first note that the trial court decides whether the prosecutor's comments so prejudiced the jury as to render them incapable of reaching a true verdict. This Court is limited in its review to whether the trial court abused its discretion. *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582 (1988), *alloc. den.*, 522 Pa. 618, 563 A.2d 887 (1989). The prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 53–54, 454 A.2d 937, 956–57 (1982). However, we may grant relief where the prosecution has deliberately destroyed the objectivity of the fact finder. *Commonwealth v. Chester*, 526 Pa. 578, 599–600, 587 A.2d 1367, 1377 (1991). Furthermore, we must examine allegedly improper prosecutorial comments within the context of defense counsel's conduct. *Commonwealth v. Clayton*, 516 Pa. 263, 285, 532 A.2d 385, 396 (1987).

Another standard by which we are guided in reviewing claims of prosecutorial misconduct is the principle of fair response. The Pennsylvania Supreme Court explained this principle in *Commonwealth v. Graham*, 522 Pa. 115, 123 n. 6, 560 A.2d 129, 133 n. 6 (1989) (citations omitted):

> Although two wrongs do not make a right, otherwise improper comments of the prosecutor are permissible when they merely counter the arguments made by defense counsel, in that such commentary would not have the unavoidable effect of prejudicing the jury.

Although the trial judge did not file an opinion in the instant matter, he fully explained his position in overruling defense counsel's objections to the Commonwealth's closing remarks. The trial judge stated:

> I would say it was, on both sides, it was highly inflammatory and extrinsic matters were brought up, such as what

happened, brought up by the Defense, as to what happened in Los Angeles. And other comments, with a list of hero cops that are putting their lives on the line each day and so it was very inflammatory on both sides. And I would say the reaction of Mr. Quinn [D.A.] may have been an over-reaction.

But, I would say there is good basis for provocation on the full coverage that you made of the Police brutality and that exists everywhere or in Los Angeles any how.

I would say there was strong advocacy on both sides, and somewhat strong reaction on the part of the Common-wealth.

I would say it was understandable in view of the strong provocation that you [defense counsel] made.

And I think one balances off the other. And I have no reason to give any curative instructions to the Jury.

*   *   *   *   *   *

[Defense Counsel's] objections are well pleaded, and the responses of the District Attorney have been well pleaded. And it's all part of the limits, and the bounds of strong advocacy, And [sic] the Jury has both sides of the picture. And I'm not going to interfere. I would say it can go to the Jury without any curative instructions from me....

Transcript of May 7, 1991, at pp. 8–9, 11.

Granted, the trial court was in the best position to evaluate the highly emotional advocacy by both counsel. Moreover, rectifying any prejudice caused by their heated closing argu-ments was the sole province of the trial court. However, we disagree with the trial court that the arguments balanced each other out in terms of offering and responding to facts collater-al to the case. We note that the use of analogies, metaphors, and collateral facts in arguing to a jury is a two-edge sword, sometimes serving to make a point in an argument, but more often providing the point for poking holes in the very same argument. In the instant parry, we consider the prosecutor's comments as going well beyond what was necessary to re-spond to defense counsel's comments.

330

■ Defense counsel was obviously and improperly hinting at the Rodney King incident when he commented that "we're not in Los Angeles. There wasn't somebody with a recorder to record what happened here." Transcripts May 6, 1991, at p. 81. Defense counsel also repeatedly disparaged the character of the police officers involved in this case, alleging they fabricated their version of the circumstances surrounding McGoth's arrest. Transcripts May 6, 1991, at pp. 76, 77–78, 85. In fair response, the prosecutor could have addressed the lack of relevance of the Los Angeles incident to the circumstances surrounding McGoth's arrest, *without* introducing a conversation he had with a police officer friend about the officer's partner being too afraid to go back out on the street after a shooting incident. He could also have generally described the bravery of the police force, *without* mentioning specific names of officers or specific acts performed in the line of duty. Transcripts May 6, 1991, at pp. 117–118. In referring by name to police officers not involved in this case, the prosecutor introduced facts not in evidence and not relevant to the jury's deliberations about the case before it.

■ The prosecutor also stepped out of bounds when he referred to McGoth indirectly with the statement, "... tell the two Officers that you guys are right, and creeps like this should not be allowed to treat others like this.... We're dealing with animals like that." Transcripts May 6, 1991, at pp. 118–119. Read in context, this comment is more than a general reference to society's undesirables, which is how the Commonwealth describes the remark. It is an obvious reference to McGoth which exceeds the reasonable latitude extended to counsel in arguing their case.

For the reasons discussed above, we conclude the trial court abused its discretion in overruling defense counsel's objections to the prosecutor's comments. We reverse and remand, therefore, for a new trial on this issue.

As his second issue, McGoth challenges the trial court's refusal to conduct a hearing on his timely *pro se* motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 1100, 42 Pa.C.S. (Purdon Supp.1992). McGoth was arrested

on April 29, 1989. He filed the Rule 1100 motion on December 7, 1990. Nothing more was done regarding the motion until defense counsel raised it the morning of trial on May 2, 1991, after jury selection but before formal arraignment. After defense counsel argued the motion to dismiss, the trial judge indicated this was the first time he had heard anything about an outstanding *pro se* petition for Rule 1100 dismissal. Moreover, continued the trial judge, defense counsel had plenty of time to litigate the motion before picking a jury. Defense counsel conceded that he did not bring the motion to the court's attention; however, he explained, that does not preclude him from arguing the Rule 1100 motion before his client was arraigned and the jury sworn.

Feeling compelled to proceed with a trial, the trial judge disposed of the motion without a hearing: "I don't see any merit to bringing up a Rule 1100 at this time. It's made of record, a matter of record in the case and preserved for any future action on appeal or anything else. But, we're ready to go ahead and have to go ahead with the Jury trial, and the motion to litigate Rule 1100 is denied." Transcript of May 2, 1991, at p. 8.

In reviewing an order dismissing a Rule 1100 motion without a hearing, the question arises as to whether such an order is interlocutory and, therefore, not appealable. The panel in *Commonwealth v. Swartz*, 397 Pa.Super. 157, 579 A.2d 978 (1990), dispelled any concerns about the appealability of the order at hand. Although such an order is interlocutory, the law makes an exception where a motion raises an issue involving basic human rights. *Swartz*, 397 Pa.Super. at 160–61, 579 A.2d at 980 (citations omitted). The Supreme Court of Pennsylvania has held that a Rule 1100 motion raises an issue of basic human rights. *Commonwealth v. Bunter*, 445 Pa. 413, 419, 282 A.2d 705, 707 (1971). Consequently, McGoth could have appealed the trial court's order denying his Rule 1100 motion without a hearing and not proceeded with the trial.

Another question presented by this case is whether McGoth waived his Rule 1100 argument by failing to bring the outstanding motion to the trial court's attention before the case

had been called to trial and/or by failing to appeal the trial court's order denying his petition without a hearing. While it could be argued that McGoth waived this issue, we will address the merits in the interest of justice.

As McGoth has pointed out in his brief, the law clearly provides that a motion to dismiss can be denied if "upon hearing, [the court] shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth[.]" Pa.R.Crim.P. 1100(g), 42 Pa.C.S. (Purdon 1989). The purpose of the hearing is to afford both parties an opportunity to present factual allegations regarding if and why the defendant was denied his right to a speedy trial pursuant to the time periods of Rule 1100.

While we agree in theory that the trial court erred in not conducting a Rule 1100 hearing, we find no prejudice resulting to McGoth. Neither McGoth's written motion nor counsel's oral arguments included any factual allegations to be addressed at a hearing. Moreover, had the trial court conducted a hearing, it would have reviewed the docket entries which indicate that all the delays were excludable in favor of the Commonwealth. Trial commenced 732 days after McGoth's arrest; for 656 of those days the running of Rule 1100 was tolled, so that the number of chargeable days was 76. Discharge under Rule 1100(g) is available only if trial has not commenced after 365 chargeable days. The Commonwealth was well within the statutory time frame. Therefore, McGoth's petition was meritless on its face.

Judgment of sentence reversed. Case remanded for a new trial.