J-A15036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE T. SMITH | |
| Appellant | No. 2304 EDA 2015 |

Appeal from the Judgment of Sentence April 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011844-2010

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 09, 2016**

Wayne Smith was charged with murder and related offenses for his role in a street brawl on the evening of June 5, 2010.  His first trial ended in a hung jury.  A second jury convicted him of third degree murder, aggravated assault, possession of an instrument of crime and carrying a firearm on public streets in Philadelphia.[1]  The trial court sentenced Smith to an aggregate term of 25-50 years' imprisonment.  He filed timely post-sentence motions, which the Court denied.  Smith then filed a timely notice of direct appeal, and both Smith and the trial court complied with Pa.R.A.P. 1925.  We affirm.

The record reflects that David Dial uttered a racial epithet denigrating Smith's sister, Taneka, and Jimmy Schmidt.  A street fight ensued between

---

[1] 18 Pa.C.S. §§ 2502, 2702, 907, and 6108, respectively.

two duos: (1) Smith and Schmidt and (2) Dial and Tyrell Harris (the victims). Jamial Burley soon joined the fight on the side of Smith and Schmidt.

A few minutes later, Harris started to fight with Burley, and Schmidt went to help Burley. Dial approached and said: "You ain't going to roll on my man." Smith pulled out a gun and shot Dial four times and Harris once. Dial died; Harris was hospitalized with a gunshot wound to his upper back.

That night, Smith had been driving a car owned by his sister, Latia. Latia called police to report that her car was stolen. Police officers arrived at the house where Smith, Taneka and Latia lived with their mother. The officers realized that family members had been involved in the shooting incident and told Smith's mother that they wanted to talk with everyone in the house. Smith's mother called Smith and Taneka and told them that detectives wanted to talk to them. Taneka, Jimmy Schmidt, Krysta Mitchell, and Smith's mother went to the police station. Smith did not go to the police station but instead went to his aunt's house to avoid the police.

On June 6, 2010, the morning after the shooting, Schmidt gave a written statement to police identifying Burley as the shooter. One day later, on June 7, 2010, Jamella Shaw, an eyewitness to the shooting, gave a statement to police that she saw Smith shoot the victims. After obtaining Shaw's statement, Detective Bamberski obtained a second verbal statement from Schmidt on June 25, 2010. In this second statement, Detective

Bamberski later testified, Schmidt recanted his first statement incriminating Burley and claimed that Smith was the shooter.[2] Two months later, Schmidt died in an unrelated incident.

On July 13, 2010, police detectives interviewed Burley. At first, Burley said he did not know anything about the shooting. But when detectives showed him Schmidt's statement identifying him as the shooter, Burley stated that he saw Smith shoot the victims. After Burley's interview, police arrested Smith.

Smith raises five issues in this appeal:

1. WAS JIMMY SCHMIDT'S LATER ORAL STATEMENT TO DETECTIVE BAMBERSKI IN WHICH HE IDENTIFIED [SMITH] AS THE SHOOTER INADMISSIBLE?

2. WAS THE ADMISSION OF SCHMIDT'S UNSIGNED STATEMENT MADE TO DETECTIVE BAMBERSKI HARMLESS?

3. CAN THE COMMONWEALTH SHOW - BEYOND A REASONABLE DOUBT - THAT JIMMY SCHMIDT'S UNSIGNED STATEMENT DID NOT CONTRIBUTE TO THE VERDICT?

4. DID THE COURT ERR IN NOT DECLARING A MISTRIAL *SUA SPONTE* WHEN THE COMMONWEALTH INTRODUCED [SMITH'S] PRE-ARREST SILENCE OVER DEFENSE OBJECTION?

5. WAS THE INTRODUCTION OF A FIREARM ALLEGEDLY SEEN IN [SMITH'S] POSSESSION WITHIN ONE WEEK OF THE SLAYING WHICH WAS NOT TIED IN ANY WAY TO THE SLAYING PREJUDICIAL?

_____

[2] Schmidt's second statement was verbal but not written. Schmidt refused to give a written statement against Smith on the ground that he considered Smith to be like "family".

Brief For Appellant, at 4.

We consider Smith's first and third arguments together. The thrust of both arguments is that Detective Bamberski's testimony about Schmidt's second statement, in which Schmidt recanted his prior accusation against Burley and named Smith as the shooter, was inadmissible hearsay. The trial court overruled Smith's hearsay objection and instructed the jury that it could not consider this statement for its truth but only to explain the course of the police investigation. We conclude that the court's decision was an appropriate exercise of its discretion.

Our standard of review for evidentiary rulings is abuse of discretion. *Commonwealth v. Montalvo*, 986 A.2d 84, 94 (Pa.2009). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super.2003); Pa.R.E. 801(c). Certain out-of-court statements offered to explain the course of police conduct are admissible; such statements do not constitute hearsay, because they are not offered for the truth of the matters asserted but merely to show the information upon which police acted. *Dent*, 837 A.2d at 577–79. The reason for admitting course of conduct evidence is because "an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct." *Id*. at 580. However, "not every

- 4 -

out-of-court statement having bearing upon subsequent police conduct should be admitted because, despite cautionary instructions, there is great risk that certain types of statements will be considered by the jury as substantive evidence of guilt." *Commonwealth v. Chmiel*, 889 A.2d 501, 533 (Pa.2005). To guard against prejudice, "the trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against any prejudice arising therefrom." *Id*. at 532-33.

In multiple cases, courts have held out-of-court statements to police officers admissible to explain the officers' course of conduct, notwithstanding the speaker's absence from the witness stand and the possibility of prejudice. *See Commonwealth v. Weiss*, 81 A.3d 767, 805-06 (Pa.2013) (in capital murder trial, state trooper's testimony that he received anonymous telephone call that defendant had given victim ride home on night she disappeared was not inadmissible hearsay, where Commonwealth offered testimony not to prove that defendant had given victim ride home but to explain what prompted trooper's interview with defendant); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1036-37 (Pa.Super.2014) (in jury trial, court properly allowed detective to testify about recorded statement he took from an individual concerning victim's murder); *Commonwealth v. Cruz*, 414 A.2d 1032, 1035 (Pa.1980) (content of police radio call did not constitute hearsay where Commonwealth introduced call to

explain police conduct and not to prove truth of content of tape); *but see Commonwealth v. Moseley*, 114 A.3d 1072, 1078 (Pa.Super.2015) (error to admit officer's testimony that he was responding to informant's complaint of "drug activity" at apartment complex, where court failed to give jury cautionary instruction as to its limited admissibility).

In view of these precedents, Detective Bamberski's testimony about Schmidt's second statement was admissible.  At the time of Schmidt's second statement, the police had two conflicting accounts: (1) Schmidt's first statement incriminating Burley, and (2) Shaw's statement incriminating Smith.  To resolve the discrepancy, Detective Bamberski went back to Schmidt and obtained a second statement, this time accusing Smith. Following Schmidt's second statement, the police expanded the investigation by interviewing Burley.  When the police told Burley about Schmidt's first statement identifying Burley as the shooter, Burley responded that Smith was the shooter.  It was reasonable to inform the jury of all statements in this chain, including Schmidt's second statement, so that the jury understood the manner in which the police investigated the crimes and gathered its body of evidence against Smith.  Moreover, in contrast to *Moseley*, the court gave an appropriate limiting instruction that the jury should not consider Schmidt's second statement for its truth but to explain the course of the police investigation.  The jury is presumed to have followed this instruction.  *Commonwealth v. Estepp*, 17 A.3d 939, 945

(Pa.Super.2011) (officer's testimony regarding statements made by confidential informant was admissible to explain officer's course of conduct, during prosecution for possession with intent to deliver a controlled substance; defendant presented no evidence to rebut presumption that jury followed instruction to consider this evidence only to explain officer's course of conduct).

The two decisions relied upon by Smith in his brief – ***Commonwealth v. Palsa***, 555 A.2d 808 (Pa.1989), and ***Government of Virgin Islands v. Muiruri***, 340 Fed. Appx. 794 (3d Cir. 2009) – are not on point. In ***Palsa***, following a one-car accident, the police arrested the driver (Silvoy) both for driving under the influence and possession of fifteen pounds of marijuana found in his car. While in custody, Silvoy told an undercover detective that at the time of the accident, he was on his way to deliver marijuana to a man named "Ed" (the appellant) at 116 East Irvin Street in State College, Pennsylvania. Silvoy added that one day before the accident, he had sold Ed a pound of marijuana for $500.00, and Ed had given him an extra $500.00 as a down payment on an order of fifteen additional pounds. The police conducted a "sting" operation which culminated in the appellant's arrest for attempting to complete the purchase of the fifteen pounds of marijuana. Silvoy then became a fugitive and was not available to testify at the appellant's trial. Over the appellant's objection, the trial court permitted the undercover detective to describe Silvoy's custodial statement to the jury.

The trial court instructed the jury that it could not consider this testimony as substantive evidence of guilt but only to explain the police's subsequent course of conduct.

The jury found the appellant guilty of attempt to gain possession of fifteen pounds of marijuana with the intent to deliver the substance to others. Our Supreme Court reversed and remanded for a new trial, reasoning:

> In this case, the police easily could have explained the course of their conduct pertaining to the investigation and arrest of appellant … without resorting to the full and explicit statements given by Silvoy. It is the prosecutor's duty to avoid the introduction of out-of-court statements that go beyond what is reasonably necessary to explain police conduct. Certainly, references to appellant's having purchased one pound of marijuana on the day prior to the attempted delivery of the fifteen pounds involved in this case could have been eliminated. The statements could have been attenuated in other ways, too, to lessen their prejudicial impact. Thus, an adequate explanation for police conduct could have been provided, while minimizing the introduction of statements made by a person who was not under oath and who was not available for cross-examination.
>
> It is certainly to be recognized that there is often a subtle, and elusive, difference between the use of statements to establish the truth of facts averred by one not in court and their use to establish a course of conduct by police. Further, in weighing the prejudice to the defense versus the prosecution's need for the challenged statements, the ambit of the trial court's discretion is to be preserved. In the present case, however, the statements were so highly incriminating, and the need for them in the form in which they were introduced was so lacking, that their admission cannot be sustained.

*Id*. at 811.

The present case is distinguishable from **Palsa**. The prosecution in **Palsa** introduced Silvoy's statement about an extraneous subject (the appellant's purchase of marijuana on a prior occasion) that went beyond what was essential to explain police conduct and prejudiced the defendant by casting him as a repeat drug dealer. Here, in contrast, Schmidt's second statement related strictly to the matter under investigation, the shooting of Dial and Harris, and was a vital link in this investigation.

In **Muiruri**, the defendant was charged with rape, and his defense was that he had consensual intercourse with the complainant. The jury heard the testimony of a man who overheard the security guard at the complainant's condominium complex tell the complainant's husband: "Your wife has been raped." The trial judge permitted this testimony by accepting the Government's contention that it did not offer the security guard's out-of-court statement to prove the truth of the matter asserted but to explain why the complainant's husband stopped searching for his wife and went to the hospital. The Third Circuit held that there was "[no] tenable non-hearsay purpose for the security guard's statement that [the complainant] had been raped." **Id**. at 799. The court reasoned:

> The Government claims that the out-of-court statement was offered to explain [the complainant's husband's] activities after his wife's encounter with Muiruri, but those activities are utterly irrelevant. The fact that [the complainant's husband] was searching for his wife and eventually found her at the hospital has no bearing on the question whether the sexual encounter between Muiruri and [the complainant] was consensual. To the extent that the witness's testimony provided context for the

jury, its marginal utility could have been achieved without the hearsay statement - which expressed a third-hand opinion regarding the ultimate issue in the case - that [the complainant] had been raped. On appeal, the Government makes no attempt to explain how [the complainant's husband's] actions were relevant, or why the hearsay statement was so necessary to provide context that it was not intended to prove the truth of the matter asserted.

*Id*. at 798-99. The Government's claim that this statement explained the complainant's husband's subsequent course of conduct was a "thinly veiled pretext," *Id*. at 789, because it had no bearing on the ultimate issue in the case: whether the defendant had consensual intercourse with the complainant.

While the security guard's testimony in *Muiruri* was irrelevant hearsay, Schmidt's second statement to Detective Bamberski is relevant to the central issue in this case -- the identity of the shooter -- and explains the police's course of conduct in obtaining Burley's statement and then arresting Smith. The trial court properly admitted Detective Bamberski's testimony for a non-hearsay purpose.

For these reasons, Smith's first and third arguments are devoid of merit.

In his second argument on appeal, Smith argues that Schmidt's second statement was inadmissible under the Confrontation Clause of the Sixth Amendment. Smith waived this argument because he did not lodge a Confrontation Clause objection during trial; he only lodged a hearsay objection. *Commonwealth v. Arroyo*, 723 A.2d 162, 170 (Pa.1999) (if

party objects to evidence on specific ground, all other reasons for its exclusion are waived); *Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa.Super.2014) (where appellant objected to admission of 911 tapes as hearsay, but not on Confrontation Clause grounds, he waived Confrontation Clause argument on appeal), *appeal granted and order vacated on other grounds*, 111 A.3d 168 (Pa.2015).

Even if Smith preserved this issue, it has no merit. A statement admitted for a purpose other than establishing the truth of the matter asserted -- such as, in this case, the investigating officers' course of conduct -- does not violate the Confrontation Clause. *Commonwealth v. Dargan*, 897 A.2d 496, 500 (Pa.Super.2006).

Smith argues that the United States Supreme Court's plurality opinion in *Williams v. Illinois*, -- U.S. --, 132 S.Ct. 2221 (2012), supports his position that Schmidt's second statement was inadmissible under the Confrontation Clause. We are not convinced. Plurality decisions have no precedential value. *Petition of Hughes*, 532 A.2d 298, 303 n. 5 (Pa.1987). Even if *Williams* were precedential, it would not help Smith. The plurality in *Williams* held that an expert witness could testify for the prosecution that a DNA profile produced by an outside laboratory matched the state police lab's DNA profile using a sample of the defendant's blood. The plurality held that the expert's references to the outside lab were admissible, because they were not offered for their truth but solely for the purpose of explaining the

assumptions on which the expert based her opinions. *Id*. at 1228 ("We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause"). This rationale is consistent with the Superior Court's holding in *Dargan* that a statement admitted for a purpose other than establishing the truth of the matter asserted does not violate the Confrontation Clause.

In his fourth argument on appeal, Smith argues the trial court erred by failing to declare a mistrial *sua sponte* after the prosecutor asked a defense witness about Smith's failure to go to the police with the rest of his family. The witness, Smith's sister, Taneka, testified that the morning after the shooting, she, Jimmy Schmidt and Krystal Mitchell went to the police station. On cross-examination, Taneka explained that she went because her mother told her the police wanted to talk to her. The prosecutor asked if Smith went with his family, and Taneka responded that he did not. The prosecutor asked: "So that would make sense, right, you guys are all going down,

Wayne should probably go down if he didn't do anything wrong, right?" Smith objected, and the court sustained the objection and struck the question. Smith did not request a mistrial.

Because Smith failed to request a mistrial when the court sustained his objection, he cannot complain on appeal that the trial court failed to grant a mistrial. *Commonwealth v. Ables*, 590 A.2d 334, 340 (Pa.Super.1991) ("A defendant is required to request a mistrial because of an event prejudicial to him when the event is disclosed. Since appellant failed to move for a mistrial, he cannot now complain that the court erred in failing to grant a mistrial when no such motion was made. We therefore deem this issue waived").

Relying on *Commonwealth v. Molina*, 104 A.3d 430 (Pa.2014), Smith insists that he was not required to request a mistrial in order to preserve this argument for appeal. We consider *Molina* distinguishable. The issue in *Molina* was "whether a defendant's right against self-incrimination … is violated when the prosecution utilizes a non-testifying defendant's pre-arrest silence as substantive evidence of guilt." *Id*. at 432. *Molina* is different from this case, because the trial court in *Molina* overruled the defendant's objection to use of the defendant's pre-arrest silence, whereas the trial court in this case sustained the objection. In cases where the trial court overrules this objection, the court has effectively said that it considers the prosecutor's comment proper. *Commonwealth v.*

*McGeth*, 622 A.2d 940, 943 (Pa.Super.1993). A request for a mistrial would be futile under these circumstances, so the failure to seek a mistrial does not constitute waiver. *Id*. But when the defendant's objection is sustained, the trial court "[has] indicate[d] that the challenged conduct was, in fact, improper … [T]herefore, a request for a curative instruction or mistrial ... should be made immediately to remedy the error and/or to preserve the record." *Id*. at 942-43. The failure to request a mistrial in this situation results in waiver of the right to request a mistrial on appeal. *Id*. That is what happened here. The court sustained an objection to the prosecutor's question to Taneka, but Smith did not follow up by requesting a mistrial. As a result, he has waived the right to argue in this Court that the trial court erred by failing to grant a mistrial.

Even if Smith had not waived his request for a mistrial, this argument is meritless because the trial court should not have sustained his objection to the question that the prosecutor asked Taneka. The prosecutor's question was a permissible reference to Smith's efforts to avoid apprehension, not to his silence. After the shooting, Smith did not go home; he avoided his mother and his sisters. Evidence of this behavior is admissible and probative of his consciousness of guilt. *Commonwealth v. Collins*, 269 A.2d 882, 884 (Pa.1970) ("Flight, unlike silence in the face of police questioning, cannot be taken as an assertion of a constitutional right").

Further, even assuming the question was improper, the trial court cured any prejudice by instructing the jury that questions were not evidence, sustaining Smith's objection and striking the question. *Commonwealth v. Brown*, 987 A.2d 699, 712 (Pa.2009) (no reversible error based on challenged question where objection was sustained, no answer was provided, and jury had been instructed that questions were not evidence).

Finally, we note that spontaneously declaring a mistrial despite Smith's failure to request one might have violated Smith's double jeopardy rights and barred a retrial. A mistrial not requested by the defendant must be supported by "manifest necessity." Pa.R.Crim.P. 605(B). If a trial court *sua sponte* declares a mistrial in the absence of manifest necessity, the defendant may not be retried. *Commonwealth v. Bycer*, 401 A.2d 740, 742 (Pa.1979) (under double jeopardy clause, "retrial is improper unless the previous trial was aborted on a motion by the defendant or out of manifest necessity"). Had the trial court *sua sponte* declared a mistrial here, Smith could have subsequently argued that there was no manifest necessity. This might well have succeeded, because as we observed above, the trial court should not have sustained his objection in the first place.

In his final argument, Smith asserts that the trial court abused its discretion in allowing the Commonwealth to present evidence that he had a gun shortly before the crimes in question. Specifically, the Commonwealth presented Burley's testimony that Smith showed him a small gun less than

one week before the shooting. Burley testified that Smith told him the gun was .40 caliber, but the gun was actually much smaller than .40 caliber. The fired cartridge casings found at the crime scene and the bullets recovered from Dial's body were .25 caliber, a smaller weapon than a .40 caliber gun.

The trial court properly determined that Burley's testimony was admissible. The fact that the accused had a weapon suitable to the commission of the crime charged

> is always a proper ingredient of the case for the prosecution. This court has repeatedly held that the prosecution need not establish that a particular weapon was actually used in the commission of a crime in order for it to be admissible at trial. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime. Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand.

*Commonwealth v. Lee*, 662 A.2d 645, 652 (Pa.1995); *see also Commonwealth v. Yount*, 314 A.2d 242, 249 n.8 (Pa.1974) (evidence that accused possessed weapon "is relevant to show that the defendant owned or had access to an implement with which the crime could have been committed"). Evidence that the defendant possessed a weapon that was likely the murder weapon, shortly before the murder, is highly probative and properly admitted. *Commonwealth v. Murphy*, 657 A.2d 927, 933-34 (Pa.1995) (testimony that witness saw weapon of same caliber as murder weapon in defendant's possession between 1981 and 1983 was relevant and

- 16 -

admissible, even though weapon was not conclusively proven to be murder weapon); ***Commonwealth v. Akers***, 572 A.2d 746, 754-55 (Pa.Super.1990) (trial court properly permitted testimony that defendant possessed gun similar to, but not specifically identified as, murder weapon five months before murder).

These decisions support the admission of Burley's testimony that Smith showed him a small gun less than one week before the shooting was admissible. The only case Smith cites in his brief, ***Commonwealth v. Marshall***, 743 A.2d 489 (Pa.Super.1999), is inapposite, because there, the gun in question could not possibly have been the murder weapon. ***Id***. at 492 (abuse of discretion to admit weapon into evidence; "it was *impossible* for appellant's gun to have been the murder weapon since the gun was in police custody eighty days before the murder and remained in police custody on the actual day of the murder") (emphasis in original).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2016

- 17 -