J-A04020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ROBERT KANE, | : | |
| Appellant | : | No. 2509 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 19, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006611-2015

BEFORE:   PANELLA, P.J., STRASSBURGER, J.* and COLINS, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED MAY 28, 2020**

Robert Kane (Appellant) appeals from his judgment of sentence of 15 to 30 years' imprisonment imposed on July 19, 2018, following his convictions of rape of a child, involuntary deviate sexual intercourse (IDSI) with a child, aggravated indecent assault of a child, unlawful contact with a minor, corruption of minors, endangering the welfare of a child (EWOC), and indecent assault on a person less than 13 years of age.  We affirm.

Appellant is the stepfather of E.S., a minor.  From 2011 to 2015, when E.S. was between the ages of six to ten years old, Appellant sexually abused E.S. at their home in Philadelphia.  Specifically, Appellant placed his penis in E.S.'s vaginal area, anus, and mouth.  He made her swallow his ejaculated semen on several occasions and placed his finger and tongue on

_____

* Retired Senior Judge assigned to the Superior Court.

E.S.'s vaginal area. Appellant also showed E.S. pornographic images on his cell phone depicting naked women performing oral sex on naked men. On April 8, 2015, a family member contacted the Philadelphia Department of Human Services (DHS) to report the sexual abuse. DHS investigated the report, led by the investigating caseworker Jercina Butler. Caseworker Butler visited the family at their home, and E.S. subsequently disclosed the abuse at a forensic interview.

On May 21, 2015, Appellant was arrested and charged with the aforementioned crimes. The trial court granted the Commonwealth's pretrial motion to revoke bail on February 12, 2016. Appellant appealed, and this Court affirmed the order revoking bail. *See Commonwealth v. Kane*, 179 A.3d 599 (Pa. Super. 2017) (unpublished memorandum).[1]

Prior to trial, the trial court twice denied Appellant's motions to dismiss all charges based upon alleged violations of the speedy trial rule, Pa.R.Crim.P. 600(A)(2). After several continuances, Appellant's trial proceeded before a jury in December 2017. The jury found Appellant guilty of all charges. After another series of continuances, Appellant was sentenced on July 19, 2018, to an aggregate sentence of 15 to 30 years of

---

[1] This Court treated Appellant's notice of appeal as a petition for review of the decision of a governmental unit pursuant to Chapter 15 of the Pennsylvania Rules of Appellate Procedure.

incarceration, followed by 10 years of probation. Appellant timely filed a post-sentence motion, which was denied.

This timely filed appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. On appeal, Appellant presents three issues.

> I. Did the trial court err in denying Appellant's motions for dismissal for violation of Pennsylvania Rule of Criminal Procedure 600?
>
> II. Did the Commonwealth deny Appellant his right to due process by making false statements to the [trial] court and the Superior Court that Appellant was still living at home after the sexual allegations between Appellant and E.S. were made known, thus, resulting in Appellant being denied bail, when the facts were that he was living with his mother after the allegations, and a safety assessment was done to show that E.S. was in no danger?
>
> III. Did the [trial] court err in allowing the [DHS] investigator to testify concerning the meaning of an "indicated" report?

Appellant's Brief at 3 (unnecessary articles and capitalization omitted).

Appellant's first issue challenges the denial of his Rule 600 motions. "In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Ramos***, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*). "The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." ***Id.***

The case at issue here was initiated on May 21, 2015; thus, Rule 600 required that the trial commence within 365 days, or before May 20, 2016. ***See*** Pa.R.Crim.P. 600(A)(2)(a). After a series of continuances, Appellant's

trial commenced on December 12, 2017. The Rule provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

Appellant focuses on two periods of delay he contends should be attributable to the Commonwealth: from September 26, 2016, to May 16, 2017, and from May 16, 2017, to December 11, 2017. Appellant's Brief at 11-14. He claims that the Commonwealth caused the trial to be continued on September 26, 2016, and again on May 16, 2017, by providing discovery to the defense twice on the eve of trial. *Id.* Therefore, Appellant contends the Commonwealth failed to use due diligence in bringing the case to trial, and the trial court abused its discretion in twice refusing to grant his motions to dismiss. *Id.*

After review of the record, we conclude that Appellant has waived this issue by failing to ensure that the necessary information for appellate review was included in the certified record. Appellant claims he filed two motions to dismiss pursuant to Rule 600(D)(1): one on January 14, 2016, and a second on August 23, 2017. Only his August 23, 2017 motion appears in the record. The January 14, 2016 motion to which Appellant refers in his brief

- 4 -

does not request dismissal based upon Rule 600(D)(1); instead, it is a motion requesting release on nominal bail pursuant to Rule 600(D)(2).[2]

Most significantly, Appellant failed to request the transcript of any evidentiary hearing on the issue. Appellant refers in his brief to "the evidentiary hearing," but does not provide a citation to notes of testimony of such hearing or even a date. Appellant's Brief at 11. Our review of the certified record does not reveal notes of testimony from any Rule 600 evidentiary hearing, and Appellant's notice of appeal does not include a request to transcribe any such hearing.

"The fundamental tool for appellate review is the official record of the events that occurred in the trial court." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (citation omitted). The certified record consists of "original papers and exhibits filed in the lower court, paper

---

[2] There are two orders denying motions to dismiss in the record: one docketed on April 26, 2017, and a second docketed on October 23, 2017. The Commonwealth references a September 26, 2016 defense motion to dismiss, *see* Commonwealth's Brief at 3, but no such motion appears on the docket or elsewhere in the certified record. It is possible such motion was oral, as the docket for that date has a notation to list the case for a Rule 600(A) hearing. However, without a transcript of any proceedings that occurred on September 26, 2016, it is impossible for us to know, and it is Appellant's responsibility to provide a specific citation to the place in the record where the matter referred to appears. *See* Pa.R.A.P. 2119(c). Moreover, if Appellant's motion was oral, such motion was insufficient to preserve a Rule 600 claim. *Commonwealth v. Brock*, 61 A.3d 1015, 1020 (Pa. 2013) ("[A] motion to dismiss pursuant to Pa.R.Crim.P. 600 must be made in writing, and a copy of such motion must be served on the Commonwealth's attorney.").

copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. This Court cannot consider on appeal any items that are not part of the certified record. *Preston*, 904 A.2d at 6. Our rules place the responsibility of ensuring the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." *Id.* at 7 (citing Pa.R.A.P. 1931).

Specifically, our rules require that an appellant order and pay for any transcript necessary to permit resolution of the issues the appellant raises on appeal. *See* Pa.R.A.P. 1911(a). When an appellant fails to order all necessary transcripts in compliance with Rule 1911(a), "any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." *Preston*, 904 A.2d at 7.

Appellant's notice of appeal does not attach a request for a transcript. *See* Pa.R.A.P. 904(c) (requiring same). Given our standard and scope of review for Rule 600 issues, we are unable to conduct meaningful review of Appellant's Rule 600 claim without the transcript(s) of the evidentiary hearing(s). Since Appellant failed to request any transcripts, the absence of the transcript falls squarely on Appellant and is not attributable to any breakdown in judicial process. Therefore, we deem Appellant's Rule 600 claim to be waived.

Appellant's second issue involves a vague argument surrounding an alleged violation of his due process rights in relation to his bail. Prior to trial, the Commonwealth filed a motion to revoke Appellant's bail. In support of this motion, the Commonwealth averred that when an investigating detective arrived at the family's home, the detective observed Appellant and children in their underwear. In the instant appeal, Appellant insists the averment in the motion was false, and the Commonwealth knowingly relied upon this false statement in support of its motion to revoke bail and in Appellant's appeal from the grant of that motion. Appellant claims he was living with his mother, and not in the family's home with E.S. Appellant suggests certain evidence introduced by the Commonwealth at trial disproves the statement, and contends the Commonwealth violated his due process rights by allowing him to remain incarcerated prior to trial. Appellant argues that this alleged due process violation should result in the vacation of his judgment of sentence.

The lone case Appellant cites in support of his argument, **Napue v. Illinois**, 360 U.S. 264 (1959), is completely inapposite to both the facts and procedural posture of Appellant's case. Moreover, since Appellant has already been tried and convicted, and is now serving his sentence, we cannot grant Appellant substantive relief on his pretrial claim that his bail should not have been revoked, rendering his claim moot. **See Commonwealth v. Dixon**, 907 A.2d 468 (Pa. 2006). While sometimes

appellate courts will decide similar issues based upon the capable-of-repetition-but-evading-review exception to the mootness doctrine, we decline to do so here. This Court has determined already that the trial court did not abuse its discretion in revoking Appellant's bail. **See Kane**, **supra.** Even assuming *arguendo* that later evidence at trial conflicted with the facts the trial court had before it at the bail revocation hearing, this does not mean the trial court erred in denying Appellant's bail based on the information it had before it at the time. No relief is due on Appellant's second issue.

We turn now to Appellant's third issue. Appellant argues that the trial court erred by allowing the testimony of DHS investigator, Caseworker Butler, regarding the meaning of an "indicated" report.

We review this issue under the following standard.

> The admissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. To the extent that this case presents a question of law, our standard of review is *de novo*, and our scope is plenary.

**Commonwealth v. Alicia**, 92 A.3d 753, 760 (Pa. 2014) (citations omitted).

By way of background in the instant case, Caseworker Butler, as part of her role on behalf of DHS on an interdisciplinary team investigating fatalities, near fatalities, and sexual abuse cases, interviewed E.S.,

Appellant, and other family members regarding a report of alleged sexual abuse of E.S. by Appellant at E.S.'s home. Caseworker Butler interviewed E.S. in her room while Appellant and other family members were downstairs. E.S. initially denied the allegation to Caseworker Butler, but after Caseworker Butler left, E.S. disclosed the sexual abuse to her older sister. E.S. and her sister told their mother, who alerted DHS. E.S. was then scheduled for a forensic interview at the Philadelphia Children's Alliance, where she disclosed the abuse to a forensic interviewer from the Alliance. Her interview was witnessed behind a one way mirror by a police detective and a DHS caseworker.

During Caseworker Butler's testimony, the assistant district attorney (ADA) questioned Caseworker Butler about the nature of the DHS team, her years of experience at DHS, and the number of investigations on which she has worked. Caseworker Butler testified that she had worked for DHS for 10½ years, and over that time, she had conducted thousands of investigations. The ADA asked her whether children always disclose abuse when interviewed at their homes. Caseworker Butler responded, "[s]ometimes you'll have a child disclose, sometimes not. It depends on the situation, the environment. That's the norm for a child not to disclose especially if we are actually interviewing them in the home where the abuse actually took place." N.T., 12/14/2017, at 70.

Caseworker Butler was shown the report she prepared regarding the investigation, which later was introduced into evidence as Commonwealth Exhibit 8.[3]  The ADA asked Caseworker Butler, "what does it mean if a report is indicated?"  N.T., 12/14/2017, at 71.  Appellant's counsel objected, but the trial court overruled his objection.  Caseworker Butler responded, "When a report is indicated, the information that I gathered throughout the investigation states that there was enough evidence to support that the **disclosure made by [E.S.] is true**."  *Id.* (emphasis added).

On appeal, Appellant argues that "[a]llowing the witness to express that her investigative report contained enough evidence that E.S.'s sexual allegations were true improperly bolstered the victim's credibility," particularly because there was no physical evidence of abuse.  Appellant's Brief at 17.  Appellant contends that if the investigator simply had read the statutory definition,[4] her response would not have been as problematic.  But

---

[3] Appellant objected to the introduction of the report because it referred to DHS's conclusions about E.S.'s credibility.  The Commonwealth agreed to redact any references to E.S.'s credibility from the report, and the trial court admitted the redacted report.  N.T., 12/15/2017, at 17-20.  However, the copy included in the certified record does not have any redactions.  *Id.* at Commonwealth Exhibit 8.

[4] The Child Protective Services Law (CPSL) defines "[i]ndicated report" as

> a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:

*(Footnote Continued Next Page)*

since Caseworker Butler referenced the truth of E.S.'s allegations, the jury could have interpreted her statement as endorsing E.S.'s credibility, particularly because the Commonwealth took care to point out her professional experience investigating sexual abuse allegations. *Id.* at 17-19.

Under longstanding precedent in this Commonwealth, determining witness credibility "is exclusively the function of jurors." *Commonwealth v. Maconeghy*, 171 A.3d 707, 713 (Pa. 2017). Our Supreme Court has held "a lay jury is capable of determining whether a witness is lying, and thus expert testimony is not permissible as to the question of witness credibility." *Alicia*, 92 A.3d at 760. Elaborating further, our Supreme Court stated that

> [t]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.

*Id.* (citations omitted).

Our Supreme Court has expressed that vouching for the credibility of a child witness by an expert is of particular concern, noting the "the high

*(Footnote Continued)* ——————————

> (i) Available medical evidence.
>
> (ii) The child protective service investigation.
>
> (iii) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303.

stakes involved in child sexual assault cases and the potential power and persuasiveness of testimony by those clothed with the mantle of professional expertise." *Maconeghy*, 171 A.3d at 713. Accordingly, "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse"[5] because it "intrudes into the province of the jury relative to determining credibility." *Maconeghy*, 171 A.3d at 712; *see also* 42 Pa.C.S. § 5920(b)(2) (permitting a witness, if such witness is qualified as an expert, to testify "to facts and opinions regarding specific types of victim responses and victim behaviors," but not to the witness's "opinion regarding the credibility of any other witness, including the victim").[6]

---

[5] In her dissent in *Maconeghy*, Justice Todd pointed out that in child sexual abuse cases, "the discovery of physical evidence is the exception, rather than the rule." *Id.* at 723-24 (Todd, J., dissenting) (citing Bernd Herrmann, *et al.*, Physical Examination in Child Sexual Abuse: Approaches and Current Evidence, Deutsches Arzteblatt International, 692–703, 700 (2014)). Justice Todd's observation is consistent with the expert testimony on pediatric and child abuse provided in this case by Dr. Marcia McColgan. *See* N.T., 12/13/2017, at 53 ("The majority of children who have been sexually abused even when there is penetration have perfectly normal examinations. Only less than five percent of children who have been sexually abused have definitive findings that there was previous physical trauma to that area.").

[6] Our Court has explained section 5920 as follows.

In 2012, the General Assembly enacted 42 Pa.C.S. § 5920 as a statutory rule of evidence permitting qualified experts to testify in certain criminal proceedings about "the dynamics of sexual

*(Footnote Continued Next Page)*

Similarly, "lay witnesses are generally not permitted to opine upon the credibility of a defendant."[7] ***Commonwealth v. Yockey***, 158 A.3d 1246, 1255 (Pa. Super. 2017). This is particularly the case with a lay witness testifying in the witness's professional capacity,[8] such as "a police officer in whose testimony a jury could find an unwarranted appearance of authority

*(Footnote Continued)* ――――――――

violence, victim responses to sexual violence[,] and the impact of sexual violence on victims during and after being assaulted." 42 Pa.C.S. § 5920(b)(1).

Section 5920 permits expert testimony limited to "opinions regarding specific types of victim responses and victim behaviors." 42 Pa.C.S. § 5920(b)(2). S[ubs]ection 5920(b)(3) specifically precludes an expert witness from opining on "the credibility of any other witness, including the victim[.]" 42 Pa.C.S. § 5920(b)(3).

***Commonwealth v. Cramer***, 195 A.3d 594, 608 (Pa. Super. 2018).
[7] In this case, the opinion was provided regarding the complainant, but because this is a proverbial "he said/she said" situation, stating the complainant was credible necessarily means that the defendant was not.

[8] We observe that it is easy to blur the lines between an expert and lay witness when the witness is testifying in a professional capacity. In this case, there was no mention of the status of Caseworker Butler when she was testifying at trial. Both parties claim on appeal that Caseworker Butler testified as a lay witness. Our review of the transcript indicates that Caseworker Butler switched back and forth between testimony based upon her personal observations and testimony based upon her professional experience, suggesting that some of her testimony could fall into specialized knowledge acquired by experience, training, or education within the meaning of Pa.R.E. 702. This Court has held that a single witness may testify or offer opinions in both a lay and expert capacity during the same testimony. ***Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa. Super. 2013). Ultimately, whether Caseworker Butler was testifying as a lay witness or an expert does not affect our outcome, as our caselaw prohibits either type of witness bolstered by professional credentials from opining about a victim's credibility.

- 13 -

in the subject of credibility, something ordinary jurors are able to assess." ***Commonwealth v. McClure***, 144 A.3d 970, 977 (Pa. Super. 2016) (citation and quotation marks omitted).

In ***McClure***, a daycare worker was on trial for causing injuries to an infant in her care. During the trial, a police detective testified over objection that neither he nor a Children Youth Services (CYS) employee believed the daycare worker when she had blamed the injuries on a supposed fall at the daycare. On appeal, the daycare worker argued that the detective should not have been permitted to express his opinion about whether she had been telling the truth about the incident. This Court agreed. "[A]llowing him to express opinions that neither he nor the CYS employee believed [the daycare worker] is not only irrelevant but also prejudicial. Allowing opinions on [the daycare worker's] credibility, despite charging the jury that determinations of credibility are for the jury, constitutes error that we cannot consider harmless." ***Id.*** This Court vacated her judgment of sentence, and remanded for a new trial.

This Court has treated the testimony of a child welfare caseworker in a similar fashion to the testimony of a police officer. In ***Commonwealth v. Loner***, 609 A.2d 1376 (Pa. Super. 1992), Loner was on trial for a myriad of charges related to the alleged sexual abuse of his stepdaughter. The prosecution presented, over objection, the testimony of a CYS caseworker who had investigated the child's allegations on behalf of CYS. The

- 14 -

caseworker testified that she had interviewed the child to determine whether "there was any truth to the matter that [Loner] had sexually abused [the child]." *Id.* at 1377. She also stated that her interview was an attempt to "validate" the report of sexual abuse. *Id.* She provided the child with anatomically correct dolls so that the child could demonstrate the alleged sexual acts with the dolls. The caseworker testified that the child used the dolls in a manner consistent with the child's prior oral statement. She testified that following the interview, she told the child's mother that she "believed the [child's] statements." *Id.*

On appeal, this Court referenced cases holding that the testimony of witnesses, "especially that of an expert, which serves to bolster the veracity of a child sexual abuse victim[,] impermissibly infringes upon the province of the jury." *Id.* This Court determined that the caseworker's testimony was offered to "bolster the veracity" of the victim and, therefore, impermissibly infringed upon the jury's function of assessing the victim's credibility. *Id.* This Court was particularly bothered by the caseworker's testimony that she believed the victim, as it allowed her "personal assessment of the truth" of the victim's statements to usurp the jury's function. *Id.* This Court reversed Loner's judgment of sentence and remanded for a new trial.

*Commonwealth v. Hernandez*, 615 A.2d 1337 (Pa. Super. 1992), also involved testimony from a DHS caseworker about an indicated child abuse report. In *Hernandez*, on cross-examination, a DHS caseworker

testified that DHS found a report of child abuse to be indicated, and explained that it meant that "allegations of the report were found to be true." *Id.* at 1340. She further acknowledged that "[t]he report was indicated, based on the statement of the child," but also stated there was collateral information from the child's examining physician. *Id.*

This Court concluded the trial court did not err by permitting the testimony and distinguished the case from *Loner*. Unlike *Loner*, which involved testimony elicited by the ADA on direct examination, in *Hernandez,* the caseworker's "explanation of the CPSL procedures she had followed in conducting the DHS investigation were elicited by defense counsel under hostile questioning" and the "scope … did not go beyond that which was necessary to explain her method of investigation." *Hernandez*, 615 A.2d at 1342. Moreover, unlike *Loner*, where the social worker testified that she had undergone specialized training in the area of interviewing and working with child-victims of abuse, the social worker in *Hernandez* "was not qualified as an expert, nor did she offer any testimony from which the jury could reasonably conclude that she had specialized skills in dealing with child sexual abuse." *Hernandez*, 615 A.2d at 1341-42.

The above cases make clear that a witness who has specialized expertise in dealing with child sexual-abuse victims cannot opine on the veracity of the victim. In its Rule 1925(a) opinion, the trial court does not refer to such cases, and simply reasoned that Caseworker Butler was

permitted to opine on the ultimate issue in the case, citing **Huggins**, **supra**. It further justified the admission of Caseworker Butler's testimony as an explanation of DHS procedure that "was relevant to the trajectory of DHS involvement in the case." Trial Court Opinion, 2/21/2019, at 6-7.

The trial court's reliance upon **Huggins** is misplaced. As referenced *supra*, **Huggins** held that the same witness could offer both lay and expert testimony. Specifically, a state drug enforcement agent could testify as an expert regarding drug jargon used during an intercepted telephone call and as a lay witness regarding the facts of the investigation and the agent's opinion as to the identity of the speaker on the call. In rendering its holding, this Court examined various Rules of Evidence, including Pennsylvania Rule of Evidence 704,[9] and observed that Rule 704 "clearly permits both expert and lay opinion testimony on issues that ultimately must be decided by the trier of fact, in this case, the jury." **Huggins**, 68 A.3d at 967.

However, **Huggins** did not address opinions regarding victim credibility, an area that is entrusted solely to the jury. **See Maconeghy**, 171 A.3d at 712-13; **Alicia**, 92 A.3d at 760; **McClure**, 144 A.3d at 977; **Loner**, 609 A.2d at 1377; **see also** 42 Pa.C.S. § 5920(b)(2). Together, these cases establish that a Commonwealth witness backed by professional credentials relating to sexual abuse, no matter whether the witness is

_____

[9] Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Pa.R.E. 704.

- 17 -

testifying in a lay capacity, expert capacity, or both, may not offer an opinion about the credibility of a victim whom the witness encountered in her professional capacity.

Here, Caseworker Butler did not offer an opinion directly about the veracity of E.S. Instead, by testifying that the indicated DHS report meant that Caseworker Butler had gathered enough supportive evidence to demonstrate that E.S.'s disclosure was true, Caseworker Butler indirectly vouched for E.S.'s credibility.

The Commonwealth argues in its brief that "mark[ing the] report as '[i]ndicated' was merely an expression that E.S. relayed to [Caseworker] Butler that [E.S.] was sexually assaulted, and that [Caseworker] Butler recommended further investigation." Commonwealth's Brief at 12. This is a distortion of Caseworker Butler's answer at trial. She went beyond just stating she recommended further investigation; instead, she testified that DHS had determined that E.S.'s allegations were true. Moreover, she did so after a series of questions designed to demonstrate her expertise. The ADA's soliciting of details about Caseworker Butler's background, followed by a question asking about the meaning of the indicated report, suggests that the Commonwealth wanted the jury to know DHS vouched for E.S.'s credibility, making this case more akin to **Loner** than **Hernandez**. We agree with Appellant that the ADA's questions about Caseworker Butler's expertise combined with Caseworker Butler's mention of the truth in relation

to E.S.'s allegations is what renders the admission of her testimony an abuse of discretion.

Furthermore, while the trial court points to a secondary purpose in providing the caseworker's testimony – that is, explaining the trajectory of DHS involvement in the case – the trial court did not instruct the jury that it may only consider the testimony for that purpose. Trial Court Opinion, 2/21/2019, at 6-7.

Moreover, its justification is based on a flawed premise. Specifically, the trial court contends that Caseworker Butler's testimony explained DHS procedure, which, according to the trial court, was an interview of a complainant at home, followed by a determination by the caseworker "as to whether that initial interview supports or 'indicates' further investigation." *Id.* at 6.

> Similarly, the Commonwealth argues Caseworker Butler's comment
>
> simply described a procedural step that had to take place for a sexual abuse investigation to proceed, as it did in this case. *See* 23 Pa. C.S. § 6303(a) (defining an 'indicated report' as 'a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on … the child protective service investigation').

Commonwealth's Brief at 12.

The justification offered by the trial court and the Commonwealth is not based on the record or the law. The ADA never asked Caseworker Butler to explain the steps of the investigation following the interview at the home.

Moreover, under the CPSL, the designation of "indicated" is one of the potential dispositions of the CPSL investigation, not the starting point. *See* 23 Pa.C.S. § 6338 (requiring the county agency to change the status to indicated in the statewide database of child abuse perpetrators after the county agency determines that a report of child abuse is indicated).

While the CPSL establishes joint investigative teams between county agencies and law enforcement officials for some reports of child abuse, *see* 23 Pa.C.S. § 6334.1(2), (3), such teams exist "to avoid duplication of fact-finding efforts and interviews to minimize the trauma to the child." 23 Pa.C.S. § 6365(c). Although DHS and the police may work together during an investigation to streamline the process, the CPSL does not make the police's filing of criminal charges contingent upon DHS's conclusion that a report of child abuse should be indicated. Similarly, it does not make DHS's finding that a child abuse report is indicated conditioned upon the filing of criminal charges.[10] While the investigations overlap, each investigation serves a different ultimate purpose: police investigate to determine whether a crime was committed, whereas DHS investigates to determine whether it

_____

[10] We do note, however, that the CPSL does provide for a disposition of a "founded" report, a disposition that DHS must enter if there is a "judicial adjudication," such as a criminal verdict of guilt, which is "based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse." 23 Pa.C.S. § 6303(a).

should administratively designate a report of child abuse as indicated, which triggers inclusion in the statewide database of child abuse perpetrators.[11]

Since DHS's CPSL investigation overlapped with the criminal investigation, some explanation from DHS regarding the investigation and the factual findings it developed could be relevant. But the trial court's blanket conclusion that the entire trajectory of DHS's investigation had probative value in Appellant's criminal case is not sufficient to establish relevance pursuant to Pa.R.E. 401.

Furthermore, to the extent that DHS's involvement had relevance, the trial court offered only a conclusory statement that the probative value outweighed any danger of unfair prejudice to Appellant or confusion of issues, without any explanation or analysis. *See* Trial Court Opinion, 2/21/2019, at 6-7. Given the impermissible opinion testimony discussed *supra*, we fail to see how the probative value outweighed the unfair prejudice. *See* Pa.R.E. 403. Additionally, the standard DHS uses to find a

_____

[11] As our Supreme Court has explained,

> [a] finding [by DHS] that a person has committed child abuse results in the inclusion of the actor in a statewide database, [23 Pa.C.S.] §§ 6331, 6338(a), the purpose of which is to protect children from further abuse. Inclusion on the statewide database impacts a person's ability to obtain certain kinds of employment, housing, and participate in certain volunteer activities. See 23 Pa.C.S. §§ 6344, 6344.1, 6344.2.

*Interest of L.J.B.*, 199 A.3d 868, 870 (Pa. 2018) (footnote and citation omitted).

- 21 -

report of child abuse indicated under the CPSL is substantial evidence,[12] which is less onerous than the beyond-a-reasonable-doubt burden the Commonwealth carries at a criminal trial. Considering the differences in evidentiary standards, confusion of the issues was likely.

Based on the foregoing, we conclude that the trial court abused its discretion by permitting Caseworker Butler to opine on the credibility of E.S. during her testimony. Appellant argues that admission of this testimony constitutes reversible error, requiring a new trial. Appellant's Brief at 19. However, because Appellant did not avail himself of the trial court's offer to provide a curative instruction, Appellant has waived his request for a new trial.

Our review of the record reveals the following. After Caseworker Butler testified regarding the indicated report, defense counsel requested a sidebar, which was held off the record. N.T., 12/14/2017, at 72. Following sidebar, the trial court announced that Appellant's objection was preserved, but it was overruled for now with the opportunity for defense counsel to state his specific grounds for objection after his cross-examination. **Id.** After cross-examination, and outside the presence of the jury, the trial court heard further arguments by counsel. Appellant's counsel argued that the

---

[12] The CPSL defines substantial evidence as "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa. C.S. § 6303(a).

testimony infringed upon the jury's role to decide the ultimate issue of credibility in this case, emphasizing that even doctors and psychiatrists are not permitted to opine on such matters. *Id.* at 78-79. The trial court again overruled the objection, adding "[i]f you'd like a curative instruction for a limited instruction is probably actually more appropriately made." *Id.* at 79-80. Defense counsel did not request a curative instruction following the trial court's offer, and no further mention was made on the record, including at the two charging conferences. *See id.*; N.T., 12/15/2017, at 4-14, 99-103. The trial court provided the standard jury instruction on credibility at the conclusion of the case, to which both counsel had no objection at the charging conferences. N.T., 12/15/2017, at 5, 99, 148-51. The instruction, *inter alia*, informed the jury it was the sole judge of credibility of the witnesses in the case. *Id.* at 148-51.

"Even if witness testimony causes prejudice, adequate instructions may be able to cure the error." **Commonwealth v. Ramos**, ___ A.3d ___, 2020 WL 1873251 at *2 (Pa. Super. 2020). The alternative is to declare a mistrial, which is "an extreme remedy that is appropriate only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Leap**, 222 A.3d 386, 392 (Pa. Super. 2019) (citation and quotation marks

omitted). "When a trial court gives adequate cautionary instructions to the jury, it is not necessary for the court to declare a mistrial." *Id.*

For example, in *Hernandez*, after a DHS caseworker testified during cross-examination about the meaning of an indicated report, the trial judge

> gave a cautionary instruction to the jury immediately following the statements in question. This instruction correctly informed the jury that [the caseworker,] in performing her job, made certain evaluations and reached certain conclusions separate and apart from the jury's function. The instruction specifically warned that only the jury was the factfinder in the case, and it "must not and may not accept any standard adopted by DHS." This instruction [was] sufficient to cure any possible prejudice that may have resulted from [the caseworker's] comments.

*Hernandez*, 615 A.2d at 1341 (citations omitted); *see also Leap*, 222 A.3d at 392 (holding that appropriate curative instructions to the jury could overcome error of admission of expert testimony bolstering the victim's credibility).[13]

Here, Appellant neither requested a curative instruction nor requested a mistrial. Typically, once an objection to testimony has been overruled,

_____

[13] The Commonwealth urges us to find that the instruction provided during the jury charge overcame any prejudice, rendering the admission of Caseworker Butler's testimony to be harmless error. Commonwealth's Brief at 12-13. We are not convinced that this single general instruction during the jury charge overcame the prejudice to Appellant. In a similar situation, where a police officer shared his and the CYS caseworker's opinions that the defendant was not telling the truth about injuries to his child, this Court rejected the notion that a general credibility instruction during the end-of-the-case charge was adequate. *See McClure*, 144 A.3d at ("Allowing opinions on [a defendant's] credibility, despite charging the jury that determinations of credibility are for the jury, constitutes error that we cannot consider harmless.").

failing to request a curative instruction or mistrial does not result in waiver for appellate review. *Commonwealth v. McGeth*, 622 A.2d 940, 943 (Pa. Super. 1993). This is because the trial judge has signaled that the testimony was proper by overruling the objection, rendering a motion for mistrial or curative instructions to "be an exercise in futility." *Id.* (citing *Commonwealth v. Maloney*, 365 A.2d 1237, 1242 (Pa. 1976)).

However, in the instant case, notwithstanding its ruling on Appellant's objection, the trial court specifically offered to provide a curative or limiting instruction, but Appellant did not avail himself of the trial court's offer. We find this offer and failure to respond to be significant. *See Commonwealth v. Johnson*, 668 A.2d 97, 104 (Pa. 1995) (holding that where the trial court denied a motion for a mistrial following testimony defense counsel alleged was problematic, but defense counsel did not respond to the trial court's offer to give a curative instruction, appellant could not claim prejudice from the trial court's failure to provide an instruction on appeal); *c.f. McGeth*, (emphasizing that the trial court overruled the objection then *sua sponte* indicated that there was no need for curative instructions). We conclude that since Appellant had been provided with the opportunity to cure the prejudice from Caseworker Butler's testimony, but Appellant failed to take advantage of this opportunity, Appellant has waived for appeal his request for a new trial.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Colins joins this memorandum.

President Judge Panella concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/20