J-A11035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMON DUANE AMISON | : | |
| | : | |
| Appellant | : | No. 631 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 25, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000713-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMON DUANE AMISON | : | |
| | : | |
| Appellant | : | No. 632 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 25, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003003-2019

BEFORE:  BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: May 15, 2023**

Damon Duane Amison (Amison) appeals from the judgment of sentence imposed in the Court of Common Pleas of Erie County (trial court) in these consolidated cases after his conviction of persons not to possess firearms,

_____

[*] Retired Senior Judge assigned to the Superior Court.

possession with intent to deliver (PWID), and related charges. He argues that the evidence was insufficient because it failed to establish that he possessed a "firearm" as defined by applicable law making the PWID charge inappropriate. He also contends that the trial court erred in denying his Rule 600 motion.[1] We affirm.

We take the pertinent facts and procedural history from the trial court's July 14, 2022 opinion and our independent review of the record.

**I.**

The convictions in this matter relate to events that occurred on August 5, 2019, at and near Moe's One Stop convenience store located at 24th and Parade Streets in Erie, Pennsylvania. The trial court explains:

> The charges in the Information filed on December 11, 2019 at No. 3003 of 2019 arose from [Amison]'s activities of August 5, 2019 in the 2400 block of Parade Street, Erie, Pennsylvania when Appellant fled from police who were familiar with him and who had approached him because there was an outstanding warrant for his arrest. When Appellant fled from the store … he ignored police orders to stop; and instead ran from the police into congested traffic in the 2400 block of Parade Street, causing several vehicles to abruptly stop. After a struggle with the police which involved deployment of a Taser, [Amison] was arrested. [He] was charged with weapons and flight-related offenses as follows: Count One- Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms; Count Two-Firearms Not to be Carried Without a License; Count Three-Flight to Avoid Apprehension, Trial or Punishment; Count Four-Recklessly Endangering Another Person;

---

[1] Pennsylvania Rule of Criminal Procedure 600(A)(2) provides: (2) Trial shall commence within the following time periods. (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed. Pa.R.Crim.P. 600(A)(2).

Count Five-Resisting Arrest or Other Law Enforcement; and Count Six-Disorderly Conduct.[a]

> [a] 18 Pa.C.S.A. §§ 6105(a)(1); 6106(a)(1); 5126(a); 2705; 5104; and 5503(a)(4), respectively.

According to the Criminal Complaint of August 5, 2019 which led to the charges at No. 3003 of 2019, review of store surveillance video at Moe's One Stop depicted [that Amison] possessed a handgun at the time. Further review of the store surveillance video of August 5, 2019 also depicted [that he] possessed a clear plastic bag containing a white substance which [Amison] discarded and/or concealed inside Moe's before he fled from the police. Laboratory analysis revealed the white substance was 14.53 grams of heroin and fentanyl.

On May 14, 2020, the drug charges at Docket No. 713 of 2020 ensued: Count One, Possession With Intent to Deliver (heroin and/or fentanyl) [(PWID)]; Count Two, Possession (heroin and/or fentanyl); Count Three, Possession of Drug Paraphernalia; and Count Four, Tampering With or Fabricating Physical Evidence. ...[b]

> [b] 35 Pa.C.S.A. §§ 780-113(a)(30), 780-113(a)(16) and 780-113(a)(31)(i), [], and 18 Pa.C.S.A. §4910(a)(1)[, respectively].

(Trial Court Opinion, 7/14/22, at 1-2).

On January 14, 2020, Amison filed a *pro se* omnibus pretrial motion that included, in pertinent part, a motion for writ of *habeas corpus* and/or motion to quash/dismiss the firearms charges. (**See** *Pro Se* Omnibus Pretrial Motion, 1/14/20, at 3-5).[2] On August 31, 2020, Amison filed a motion for continuance

_____

[2] Our review of the docket reflects that Amison was represented by privately retained counsel, Attorney Eric Vaughn Hackwelder, at the commencement of the litigation. It is not clear when Attorney Hackwelder withdrew his

of trial with a waiver of his prompt and speedy trial rights and a motion for discovery seeking police dispatch records. The trial court granted both motions. On November 30, 2020, Amison filed a counseled omnibus pretrial motion for relief/exhibits seeking the production of discovery previously ordered and the suppression of cell phone evidence. After the Commonwealth filed a brief, the court denied the motion. On July 19, 2021, Amison filed trial motions and exhibits again raising, in pertinent part, the unresolved issue of the firearms charges. The court held a hearing on the motion in which found that the evidence was sufficient to make it a jury question and that it should be raised in a motion for judgment of acquittal after the Commonwealth presented its evidence. (*See* N.T. Hearing, 10/20/21, at 10-13). On December 22, 2021, Amison filed a renewed motion to dismiss the firearms counts, which the trial court again denied.

On March 18, 2022, three days before trial, Amison filed a motion to dismiss on Rule 600 grounds. On March 21, 2022, immediately before *voir dire*, the parties engaged in a contentious argument on the Rule 600 motion about who bore the responsibility for the delays. The Commonwealth argued that they were caused in large part by Amison's unavailability due to the numerous pre-trial motions he repeatedly represented had to be decided

---

representation, but Attorney Elliot Jay Segal (also privately retained) entered his appearance on behalf of Amison on January 29, 2020.

before he could proceed.  Amison relied on **Commonwealth v. Hill**, 736 A.2d 579 (Pa. 1999), for his argument that filing pre-trial motions did not automatically make him unavailable for Rule 600 purposes since they did not delay the start of trial.  (**See** N.T., 3/21/22, at 11-26).  Ultimately, the trial court proposed deciding the issue based on the Rule 600 motion and the Commonwealth's brief.  Amison's counsel did not object to this suggestion.  (**See id.** at 26).  The same day, the trial court issued an order denying the motion.  (**See** Order, 3/21/22).

## II.

At trial, Amison testified that he was a drug addict and not a dealer.  He also asserted that the gun shown in the surveillance video was merely a BB gun.

Multiple officers, including Officer Strauch (who also testified at the preliminary hearing), Officer Schroeck and Detective Suchy of the Erie Police Vice Unit, testified on behalf of the Commonwealth.  Officers Schroeck and Strauch testified about their attempt to serve the warrant, locating the heroin/fentanyl and their realization, after viewing the surveillance video, that Amison had possessed and discarded a firearm, which appeared to them to be a real gun.  They explained the physical factors that made it appear to be a semi-automatic handgun and drew inferences from the way Amison was moving the firearm around, holding it and using it.

Detective Suchy, a 22-year veteran of the Erie Police Department and a member of the drug task force testified that in his expert opinion, the amount of heroin/fentanyl in this case was consistent with PWID. He explained that in the hundreds of drug investigations in which he had participated, he had never seen a user possess heroin/fentanyl in the amount Amison possessed which was more than five times the amount that he had ever seen on a user. Detective Suchy also testified that people with that much heroin possess it with the intent to deliver it for profit. This was bolstered by secondary evidence, including Amison's possession of two cell phones, which the officers stated is common for drug dealers.

The detective also explained that because drug dealing occurs in a violent setting, drug dealers typically carry firearms for their protection. Although Amison testified that the object in his possession was a BB gun, the detective explained that he has never seen a drug dealer with a "fake" firearm or BB gun because they would do very little for the drug dealers who were trying to protect their product.

The jury convicted Amison of the foregoing charges on March 23, 2022, and on April 25, 2022, the court sentenced him to an aggregate term of incarceration of not less than eight nor more than sixteen years, plus probation. Amison did not file a post-sentence motion, but he timely appealed at the above docket numbers on May 25, 2022, and filed court-ordered

statements of errors. *See* Pa.R.A.P. 1925(b). This Court consolidated the appeals *sua sponte*.

On appeal, Amison claims that (1) the evidence was insufficient where it failed to prove the item in his possession met the statutory definition of a firearm; (2) the court erred in denying his Rule 600 motion without holding a hearing or making findings of fact and accepting the Commonwealth's adjusted run date; and (3) the trial court abused its discretion by allowing the Commonwealth to argue that he should be convicted of PWID because he possessed a firearm since it failed to prove that the item in his possession met the legal definition of a "firearm."

## III.

## A.

Amison first argues that the trial court erred in denying his *habeas corpus* motion to dismiss the firearms charges because the Commonwealth failed to produce sufficient evidence that he possessed a statutorily defined "firearm" to establish a *prima facie* case. [3] The Commonwealth responds that

_____

[3] Pursuant to our standard of review:

> The decision to grant or deny a petition for writ of *habeas corpus* will be reversed on appeal only for a manifest abuse of discretion.... Our scope of review is limited to deciding whether a *prima facie* case was established.... The Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing

- 7 -

individuals can be convicted of a firearms offense without direct evidence that the weapon was operable because it can be established by circumstantial evidence.

For the purpose of a persons not to possess charge, the Crimes Code defines "firearm" as "any weapons which are designed to or may be readily converted to expel any projectile by the action of an explosive." 18 Pa.C.S. § 6105(i). Possessing firearms without a license relies on the general definition of firearm contained in Section 6102, which defines firearm based on its size, providing in pertinent part that a firearm is "[a]ny pistol or revolver with a barrel length less than 15 inches[.]" 18 Pa.C.S. § 6102. Under these statutes, we have held that "[t]he Commonwealth [] need not show the weapon to have been operable until evidence of its inoperability has been introduced into evidence." *Commonwealth v. Horshaw*, 346 A.2d 340, 342 (Pa. Super. 1975). "[A] reasonable fact finder may … infer operability … from an object which looks like, feels like, sounds like, or is like a firearm … without

_____

the case to go to the jury. When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.

*Commonwealth v. Young*, 904 A.2d 947, 954 (Pa. Super. 2006), *appeal denied*, 916 A.2d 633 (Pa. 2006) (citation and brackets omitted).

direct proof of operability." ***Commonwealth v. Fitzhugh***, 520 A.2d 424, 432 (Pa. Super. 1987) (citation omitted). Thus, "testimony that defendant possessed a gun allow[s] a reasonable inference of operability, despite lack of direct testimony on this issue." ***Commonwealth v. Holguin***, 385 A.2d 1346, 1351 (Pa. Super. 1978).

At the argument on the petition for writ of *habeas corpus* or to dismiss the firearms charges, defense counsel argued that the photograph he attached to Amison's motion was inconclusive to prove Amison had a firearm or that it was operable. (***See*** N.T., 10/20/21, at 11-12). The Commonwealth countered that the photograph was merely one still from the surveillance videotape that contained three camera angles that clearly showed Amison was holding a gun. Furthermore, based on the circumstantial evidence that Amison ran when the officers approached to serve the warrant, and he removed the weapon that was hidden in his waistband and passed it off to another individual who fled, there was sufficient circumstantial evidence that Amison believed the weapon was an operable firearm, which was sufficient for the issue to at least go to trial. (***See id.*** at 13). The court did not abuse its discretion when it found that this issue should go to the jury and denied the motion for writ of *habeas corpus* or to dismiss the firearms charges.

**B.**

Similarly, Amison argues that the trial court erred in denying his motion for judgment of acquittal on the firearms counts at the close of the

Commonwealth's case because it failed to prove the operability of the firearms.[4]

Officers Strauch and Schroeck testified about their attempt to serve the warrant, locating the heroin/fentanyl and their realization, after viewing the surveillance video, that Amison had discarded a firearm, which appeared to them to be a real gun. They explained the physical factors that made it appear to be a semi-automatic handgun and drew inferences from the way Amison was moving the firearm around, holding it and using it. (*See* N.T. Trial, 3/21/22, at 77-79, 93-97, 100-04); (N.T. Trial, 3/22/22, at 24-30, 32-40, 44, 47, 52-53).

_____

[4] "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014).

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017), *appeal denied*, 189 A.3d 389 (Pa. 2018) (emphasis omitted).

The evidence also established that Amison was a drug dealer, which tended to show that the item in Amison's possession was an operable firearm rather than a BB gun as he testified. Commonwealth expert Detective Suchy of the drug task force testified, as he did at the suppression hearing, that the amount of heroin/fentanyl was consistent with PWID in the hundreds of cases with which he had been involved, had never seen a user possess heroin/fentanyl in the amount Amison possessed, five times more than he had ever seen on a user. He testified that Amison's possession of two cell phones is common for drug dealers, and because drug dealing occurs in a violent setting, dealers typically carry firearms for their protection. The detective had never seen a drug dealer with a "fake" firearm or BB gun because they would do little for the drug dealers who were trying to protect their product.

Because the jury could infer from the foregoing that Amison discarded the gun because it was an operable firearm rather than a BB gun, the trial court properly denied his motion for judgment of acquittal at the close of the Commonwealth's case.[5]

_____

[5] Amison argues that the trial court erred in allowing the Commonwealth to argue that he was guilty of PWID because he possessed a firearm since it failed to prove the weapon was operable. Again, this fails because the jury could infer that Amison possessed an operable gun based on the circumstantial evidence.

**IV.**

We next consider Amison's claim that the trial court erred in denying his Rule 600 motion when it failed to hold a hearing, make findings of fact and accepted the Commonwealth's adjusted run date.[6] (**See** Amison's brief, at 48-66).

**A.**

We first address the claim that the trial court erred when it failed to hold an evidentiary hearing to determine if an Act 600 violation occurred. The purpose of a Rule 600 hearing is for the parties to present factual allegations about whether the defendant was denied his right to a speedy trial and, if so, why. **See Commonwealth v. McGeth**, 622 A.2d 940, 945 (Pa. Super. 1993). Generally, failure to hold a hearing on an appellant's speedy trial issue requires a case to be remanded for the hearing. **See Commonwealth v. Swartz**, 579 A.2d 978, 980-81 (Pa. Super. 1990). This is so because our scope of review on appeal is "limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court." **Commonwealth v. Robbins**, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted).

---

[6] The trial court's rulings as to computation of time under Rule 600 are reviewed for an abuse of discretion. **See Commonwealth v. Carter**, 204 A.3d 945 (Pa. Super. 2019). "An appellate court must view the facts in the light most favorable to the prevailing party." **Id.** (citation omitted). "[W]hen considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600 … (1) the protection of the accused's speedy trial rights, and (2) the protection of society." **Id.**

- 12 -

However, if the docket entries demonstrate that the defendant was brought to trial before the adjusted run date, then failing to hold a hearing is harmless error. *See McGeth*, 622 A.2d at 945.

Immediately before trial commenced, the parties to this matter engaged in a contentious argument on the Rule 600 motion about who bore the responsibility for any of the delays. The Commonwealth argued that they were caused in large part by Amison's unavailability due to the numerous pre-trial motions he repeatedly represented had to be decided before he could proceed to trial. Amison relied on *Hill*, 736 A.2d 579, for his argument that filing pre-trial motions did not automatically make him unavailable for Rule 600 purposes since they did not delay the start of trial. Instead, he maintained that the court's order scheduling a hearing on the motion was the date when delay started because only once a hearing was scheduled did he become unavailable. (*See* N.T., 3/21/22, at 11-26). Ultimately, the trial court proposed deciding the issue based on Amison's Rule 600 motion and the Commonwealth's response brief. Neither party objected. (*See id.* at 26).

First, Amison has waived this argument by failing to object at trial. *See* Pa.R.A.P. 302(a). Moreover, even if not waived, we discern no abuse of discretion where the trial court was familiar with the protracted procedural history, heard argument on the Rule 600 issue, and decided the matter on this basis, thus ensuring that this Court can review the reasons for its decision.

**B.**

Next, we determine if the trial court properly denied Amison's Rule 600 motion.

Generally, Rule 600 protects the speedy trial rights of the accused, as well as society's interest in prosecuting crimes. *See Commonwealth v. Watson*, 140 A.3d 696, 698 (Pa. Super. 2016). The Rule mandates that a "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). The final day of that period is called the "mechanical run date." *See Commonwealth v. Ramos*, 936 A.2d 1097, 1101-04 (Pa. Super. 2007). "For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the [Commonwealth's failure to exercise due diligence] shall be included in the computation of the time within which trial must commence. **Any other periods of delay shall be excluded from the computation**[]" with the mechanical run date adjusted accordingly. Pa.R.Crim.P. 600(C)(1) (emphasis added).

The trial court may exclude time from the Rule 600 calculation if "the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence[.]" Pa.R.Crim.P. 600, cmt. To prove it acted with due diligence, the Commonwealth must demonstrate by a preponderance of the evidence that it "put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010). "Where the

- 14 -

Commonwealth was prepared to proceed throughout the pendency of a case, it demonstrated that it was prosecuting the defendant's case with due diligence." **Commonwealth v. Robbins**, 900 A.2d 413 (Pa. Super. 2006), *appeal denied*, 907 A.2d 1102 (Pa. 2006) (citation omitted).

In this case, the criminal complaint was filed in case number 3003-2019 on August 5, 2019,[7] making the mechanical run date August 5, 2020. Amison's case went to trial on March 21, 2022, which was 593 days past the mechanical run date.

Most of the delay in this matter was caused by emergency judicial orders entered in response to the Covid-19 pandemic, which are not to be included in the Rule 600 calculation. **See Commonwealth v. Carl**, 276 A.3d 743, 750 (Pa. Super. 2022) (Delays caused by a Covid-19 judicial emergency closure order are not to be included in Rule 600 calculations); (**see also** Emergency Judicial Order, 3/17/20, at ¶ 1);[8] (Amended Emergency Judicial Order,

---

[7] Amison withdrew his claim that Rule 600 precludes the prosecution of case 713-2020 because trial commenced within the mechanical run date. (**See** N.T., 3/21/22, at 38).

[8] The Emergency Judicial Orders direct:

> The operation of Pa.R.Crim.P. 600 shall be suspended in the Sixth Judicial District of the Court of Common Pleas of Erie County, Pennsylvania, during the period of local judicial emergency. The time period of the duration of the judicial emergency shall be excluded from any time computation pursuant to Pa.R.Crim.P. 600. The Court finds that such delay is not chargeable to the Commonwealth or the Defendants.

3/31/20); (Second Amended Emergency Judicial Order, 4/16/20); (Judicial Order, 5/06/22). Erie County trials were cancelled from March 17, 2020, until August 18, 2020. Although trial was scheduled for the September term, the oldest cases were to have preference,[9] which did not include Amison's, and on November 11, 2020, Erie County again issued emergency orders postponing all criminal trials due to Covid-19, with trials to resume on February 8, 2021. (*See* Emergency Judicial Order, 11/12/20); (Supplemental Emergency Judicial Order, 12/21/20); (Administrative Order, 1/05/21).

This 328-day delay was excusable since it involved "circumstances beyond the Commonwealth's control and despite its due diligence." *Martz*, 232 A.3d at 810. Adding this 328-days to the mechanical run date of August 5, 2020, results in an adjusted run date of June 21, 2021. Trial commenced on March 21, 2022, 274 days beyond this date.

---

(Emergency Judicial Order, 3/17/20, at ¶ 1); (*see also* Amended Emergency Judicial Order, 3/31/20); (Second Amended Emergency Judicial Order, 4/16/20); (Judicial Order, 5/06/22).

[9] In its response to the Rule 600 motion, the Commonwealth explained that it was permitted two trials after the August "soft opening of the Courthouse" and that it was instructed that they were to be the oldest cases involving defendants who were being held in jail on their charges. Amison was serving a sentence on another case at the time. (Brief in Opposition to Defendant's Pretrial Motion, 3/21/22, at ¶ II(a)(iv)).

Additionally, another 274 days has to be subtracted from the mechanical run date because on August 31, 2020, Amison filed a continuance of the scheduled September trial for the court to first dispose of a related motion to suppress, which ultimately was decided on April 30, 2021. In that motion, he waived his speedy trial rights and the court's order reflected same.[10] (Motion for Continuance with Waiver of Prompt or Speedy Trial, 8/31/20); (Order, 9/01/20) (continuing trial "from the September 2020 trial term to the end of the next available trial term following resolution of the pending [police dispatch information] discovery matter" with Rule 600 expiration date "to be recomputed pursuant to the defendant's Rule 600 waiver"). Subtracting these 241 days from the above 274 days results in a lapse of 33 days.

As to whether there is a valid excuse for those 33 days, the trial court, in its Rule 1925(a) opinion, explains:

> On March 21, 2022, the Commonwealth filed a Brief in Opposition to Appellant's Rule 600 motion. Oral argument was

---

[10] The record also reflects that Amison filed other continuance motions in which he waived his Rule 600 right to a prompt and speedy trial, which the trial court granted, observing the waivers. (Motion for Continuance with Waiver of Prompt or Speedy Trial, 3/03/20); (Order, 3/03/20) (continuing trial until end of April 2020 term with "Rule 600 expiration to be recomputed pursuant to the Amison's Rule 600 waiver of time from this date until the last date of the April 2020 trial term of court"); (Motion for Continuance with Waiver of Prompt or Speedy Trial, 8/03/21); (Order, 8/11/21) (continuing trial until outstanding issues resolved with Rule 600 expiration date to be re-computed pursuant to Amison's Rule 600 waiver); (Motion for Continuance of Hearing/[Argument] on Defendant's Trial Motion, 8/19/21) (stating "time will not be charged against Commonwealth"); (Order, 8/20/21) (rescheduling hearing to 10/20/21) (delay will not be charged against the Commonwealth for Rule 600 purposes).

held on March 21, 2022. The court concurred with the Commonwealth's calculations as set forth in the Commonwealth's brief, and on March 21, 2022 the court denied [Amison]'s motion.

Contrary to [Amison]'s claims, the court determined the Commonwealth acted with due diligence for periods of delay identified in [Amison]'s motion. [Amison] filed multiple pre-trial motions after the original *pro se* and follow-up counseled omnibus motion was ruled upon. There were numerous e-mail exchanges between the Commonwealth and [Amison]'s counsel which, in the court's assessment, demonstrated a conscientious and high level of diligence in prosecuting the case. The Commonwealth at one or more times requested an earlier trial date, for example, e-mails in January of 2022 requested rescheduling the trial from March of 2022 to February of 2022 to accommodate a potential complication in the ADA's trial schedule and the Commonwealth's concomitant desire to diligently prosecute the case. In that instance, as one example, the court determined the time from the beginning of the February of 2022 trial term through the start date of trial, March 21, 2022, would not be held against the Commonwealth. The court concurred with the Commonwealth's position as set forth in its brief and during argument, and denied [Amison]'s motion. No abuse of discretion occurred. …

(Trial Ct. Op., at 5).

Based on the emails submitted by the Commonwealth, the trial court found that it attempted in good faith to move the trial from March 21, 2022, until the beginning of the February term, but Amison refused (after initially agreeing), so the court declined to hold the approximately 48 days against the Commonwealth for Rule 600 purposes. We discern no abuse of discretion and based on the foregoing, there was no Rule 600 violation.

## C.

Moreover, for the sake of completeness, we briefly address Amison's reliance on *Hill*, although this is not material to our disposition where we did

- 18 -

not base our decision on his multiple pretrial motions and, even if we did, *Hill* would not support his position.

In *Hill*, the defendant filed four pre-trial motions between May 2, 1994, and July 17, 1995, one of which was an omnibus pretrial motion that remained pending the entire time. In considering whether Hill was "unavailable," thus rendering the time excludable, the Pennsylvania Supreme Court observed:

> [T]he mere filing of a pretrial motion by a defendant does not automatically render him unavailable. Rather, a defendant is only unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion. If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion. A delay caused by the Commonwealth's lack of due diligence will not constitute excludable time.

*Hill*, 736 A.2d at 587 (citations omitted).

The record in *Hill* reflected that the court held multiple hearings in considering the pretrial motions and the Supreme Court observed that, therefore, "due to Hill's filing of pretrial motions, the commencement of his trial was delayed. In order to determine whether the delays caused by the pretrial motions should be excluded from the Rule [600] calculation, we must consider whether the Commonwealth exercised due diligence in opposing them." *Id.* at 588.

Other than two continuance requests by the Commonwealth, it:

> attended and was prepared for each of the hearings and other proceedings that were conducted by the trial court throughout this period. Thus, other than the two instances noted above, the Commonwealth was duly diligent during the period between May

- 19 -

2, 1994 and July 17, 1995. Consequently, the entire period, less four days, constitutes excludable time.

*Id.* at 588.

Similarly, here, Amison filed several pre-trial motions and the Commonwealth exercised due diligence by responding, producing discovery and appearing for the hearings. It explained that its failure to produce certain items was not due to lack of diligence, but because they were not in its possession. The few continuances the Commonwealth did request do not appear to have been requested in bad faith, with it ultimately offering to bring the case to trial sooner and Amison refusing.

We discern no abuse of discretion in the trial court's finding that the Commonwealth exercised due diligence. Therefore, even had this Court decided the Rule 600 issue on the basis of Amison's multiple pre-trial motions, under *Hill*, Rule 600 time would continue to run where the motions caused delays in trial because hearings had to be scheduled.

Viewing the foregoing in the light most favorable to the Commonwealth and recognizing the dual purpose to be served by Rule 600 to preserve an accused's speedy trial rights and the protection of the public, the trial court did not abuse its discretion in denying Amison's Rule 600 motion. *See Carter*, 204 A.3d at 945 (Pa. Super. 2019).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/15/2023